# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DAVE SHELDON, et al.,           )
                                 )

             **Plaintiffs,**     )

                                 )       **CIVIL ACTION**

**v.**                               )

                                 )       **No. 07-2112-KHV**

**TARA KHANAL, et al.,**        )

                                 )

           **Defendants.**     )

## MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

Dave Sheldon and Darren Kearns bring suit against Tara Khanal, David Melo, the law firm of David J. Melo, Esq., Shams Uddin, Network Mortgage, Inc., Rosemarie Klie and the law firm of Sweeney, Gallo, Reich & Bolz, LLP (collectively the "Khanal Affiliates"); New York Community Bank, James Cantanno and the law firm of Forchelli, Curto, Schwartz, Mineo, Carlino and Cohn, LLP (collectively the "NYCB Affiliates"); Option One Mortgage Corp. ("Option One"); and Julie Wong and Winzone Realty, Inc. (collectively the "Winzone Affiliates").[1] Under state law, plaintiffs allege that the various defendants committed breach of contract (Count I); bad faith performance of a real estate transaction (Count II); breach of fiduciary duty (Count III); negligent and intentional abuse of process (Counts IV and V); negligent and intentional slander of title (Counts VI and VII); common law negligence (Count VIII); negligent misrepresentation (Count IX); fraud by misrepresentation (Count X); fraud by silence (Count XI); common law conspiracy (Count XII); and tortious interference with business relationships and economic prospects (Counts XIII and XIV). This matter comes before the

---

[1] The Clerk of the Court previously entered default against Abu Athar. See Entry Of Default (Doc. #66) filed August 1, 2007.

Court on the <u>Motion To Dismiss Complaint, Or In The Alternative, For Summary Judgment</u> (Doc. #33) which the Khanal Affiliates filed April 24, 2007, the <u>Motion To Dismiss</u> (Doc. #34) which the NYCB Affiliates filed April 24, 2007, the <u>Motion To Dismiss With Supporting Memorandum</u> (Doc. #40) which Option One filed May 10, 2007, the <u>Motion For The Dismissal Of The Summons And Complaint Pursuant To F.R.C.P. 4(e)(1), 4(c)(2) and 12(b)(2)(4)</u> (Doc. #45) which the Winzone Affiliates filed May 14, 2007, and <u>Plaintiffs' Motion For Relief From Judgment Or Order Pursuant To FRCP 60(b)(4)(6) With Memorandum In Support</u> (Doc. #74). For reasons stated below, the Court overrules plaintiffs' motion for relief from judgment, sustains the motions to dismiss of the NYCB Affiliates and Option One, sustains in part the motions to dismiss of the Khanal Affiliates and the Winzone Affiliates, and orders plaintiffs to show cause why the Court should not dismiss for lack of subject matter jurisdiction all remaining claims.

## **Legal Standards**

Defendants seek dismissal of plaintiffs' claims under Rules 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6), Fed. R. Civ. P. Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Rule 12(b)(1) motions generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations. <u>Holt v. United States</u>, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citing <u>Ohio Nat'l Life Ins. Co. v. United States</u>, 922 F.2d 320, 325 (6th Cir. 1990)). In a facial challenge, the district court must accept the allegations of the complaint as true. <u>Stuart v. Colo. Interstate Gas Co.</u>, 271 F.3d 1221, 1225 (10th Cir. 2001). In a factual challenge, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based. <u>Id.</u> Courts may exercise jurisdiction only when specifically authorized to do so, <u>see</u> <u>Castaneda v. INS</u>, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." <u>Scheideman v. Shawnee County Bd. of</u>

County Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing <u>Basso v. Utah Power & Light Co.</u>, 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against jurisdiction. <u>Marcus v. Kan. Dep't of Revenue</u>, 170 F.3d 1305, 1309 (10th Cir. 1999). Plaintiffs bear the burden of showing that jurisdiction is proper, <u>see id.</u>, and must demonstrate that the case should not be dismissed, <u>see</u> <u>Jensen v. Johnson County Youth Baseball League</u>, 838 F. Supp. 1437, 1439-40 (D. Kan. 1993). Conclusory allegations of jurisdiction are not enough. <u>Id.</u>

Rule 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. The standard which governs Rule 12(b)(2) motions is well established. Plaintiffs bear the burden of establishing personal jurisdiction. <u>OMI Holdings, Inc. v. Royal Ins. Co.</u>, 149 F.3d 1086, 1091 (10th Cir. 1998). In the preliminary stages of litigation, this burden is light, and to the extent they are uncontroverted, the Court must accept as true the well-pleaded allegations of the complaint. <u>Wenz v. Memery Crystal</u>, 55 F.3d 1503, 1505 (10th Cir. 1995). If the jurisdictional allegations are challenged by an appropriate pleading, plaintiffs have the duty to support jurisdictional allegations by competent proof of supporting facts. <u>Pytlik v. Prof'l Res., Ltd.</u>, 887 F.2d 1371, 1376 (10th Cir. 1989).

Rule 12(b)(3) governs motions to dismiss for improper venue. "Venue" refers to the place where a lawsuit should be brought, and must be proper for each claim pleaded. <u>Clemons v. Speigel</u>, No. 94-4092-SAC, 1994 WL 732630, at *1 (D. Kan. Dec. 27, 1994). Once challenged, plaintiffs must show that venue is proper in the forum state. <u>Jet-Pro Co. v. Sweet Mfg. Co., Inc.</u>, No. 93-4059-SAC, 1993 WL 463512, at *8 (D. Kan. Oct. 27, 1993). The procedure to decide a motion to dismiss for improper venue is generally the same as deciding a motion to dismiss for lack of personal jurisdiction. <u>Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.</u>, 123 F. Supp.2d 569, 572 (D. Kan. 2000). In ruling on the motion, the Court may consider matters outside the pleadings without converting it to a motion

for summary judgment.  <u>Topliff v. Atlas Air, Inc.</u> 60 F. Supp.2d 1175, 1176 (D. Kan. 1999); <u>see</u> <u>Black & Veatch</u>, 123 F. Supp.2d. at 572 (affidavit and other written material can be considered on motion to dismiss for lack of personal jurisdiction).

Rule 12(b)(5) governs motions to dismiss for insufficient service of process.  In opposing a motion to dismiss for insufficient service of process, plaintiffs bear the burden to make a prima facie case that they have satisfied statutory and due process requirements so as to permit the Court to exercise personal jurisdiction over defendants.  <u>See</u> <u>Bernard v. Husky Truck Stop</u>, No. 93-2241-JWL, 1994 WL 171732, at *1 (D. Kan. Apr. 20, 1994), <u>aff'd</u>, 45 F.3d 439 (10th Cir. 1995).  The parties may submit affidavits and other documentary evidence for the Court's consideration, and plaintiffs are entitled to the benefit of any factual doubt.  <u>See</u> <u>id.</u>

Rule 12(b)(6) governs motions to dismiss for failure to state a claim.  On such a motion, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from those facts in favor of plaintiffs.  <u>See</u> <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006).  Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiffs' entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action.  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007); <u>see also</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) (plaintiffs need not precisely state each element, but must plead minimal factual allegations on those material elements that must be proved).  In other words, plaintiffs must allege sufficient facts to state a claim which is plausible – rather than merely conceivable – on its face.  <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974.

## **Discussion**

This case involves two discrete disputes concerning property at 148-18 Laburnum Avenue, Flushing, New York ("the property").  The first dispute arises from plaintiffs' purchase of the property

in February of 2006 and involves the NYCB Affiliates. The second dispute arises from plaintiffs'

attempt to sell the property in late 2006 and involves the remaining defendants.[2]

## I.    Plaintiffs' Claims Against The NYCB Affiliates

### A.    Background

On February 15, 2006, plaintiffs purchased the property at a sheriff's sale.[3]    The sheriff

---

[2]    Plaintiffs' complaint is rambling, poorly-organized and often incomplete. For purposes of clarity, the Court will first analyze plaintiffs' claims against the NYCB Affiliates, including a summary of the complaint supplemented with additional record evidence as noted. The Court will then analyze plaintiffs' remaining claims, including a summary of the complaint supplemented with additional record evidence as noted.

[3]    The complaint does not explain the circumstances of plaintiffs' purchase. From the parties' briefs and exhibits, the Court infers that the circumstances were as follows:

In June of 1998, in the United States District Court for the District of Kansas, Sheldon (through Kearns as his attorney) sued Jay and Carmen Vermonty for securities fraud. In September of 2002, a jury awarded Sheldon approximately $40,000 in damages. In November of 2002, the Court entered judgment against the Vermontys and awarded Sheldon attorney fees, costs, statutory interest and punitive damages totaling approximately $384,000.

In March of 2003, the Vermontys filed for bankruptcy in New York, naming Sheldon a judgment creditor and New York Community Bank a mortgagee of the property. Defendant James Cantanno, of defendant law firm Forchelli, Curto, Schwartz, Mineo, Carlino and Cohn, LLP, appeared on behalf of New York Community Bank. The bankruptcy court eventually dismissed the bankruptcy action at the Vermontys' request.

In July of 2003, Sheldon filed suit in New York state court to obtain a judgment ordering the sale of the property. He named as defendants each of the Vermontys' creditors, including New York Community Bank. Cantanno again appeared on behalf of New York Community Bank. On June 7, 2005, the New York state court ordered that the property be sold. The sheriff originally scheduled the sale for December 14, 2005, but postponed it pending the Vermontys' efforts to privately sell the property. They could not do so, and the sheriff conducted a public sale on February 15, 2006, at which plaintiffs purchased the property.

According to the complaint, the NYCB Affiliates "made multiple phone calls to Kansas and sent written communications (fax and letters) to Kansas regarding the first judicial sale." Complaint (Doc. #1) filed March 14, 2007 ¶ 49. Although Kearns is a Missouri resident, he apparently maintains a law office in Kansas and the NYCB Affiliates' written and telephonic communications with him were apparently directed to him at the Kansas office. Through affidavit, plaintiffs state that their correspondence with Cantanno in Kansas included discussions regarding the status of plaintiffs' state court claim, the status of the Vermontys' mortgage, and insurance coverage on the property. Cantanno called plaintiffs in Kansas to express his concern that the state court order permitted New York

(continued...)

subsequently distributed the proceeds of the sale to creditors who had interests in the property, including New York Community Bank.[4]  On October 1, 2006, New York Community Bank (through James Cantanno and his law firm Forchelli, Curto, Schwartz, Mineo, Carlino and Cohn, LLP) filed suit against plaintiffs and the Vermontys in New York state court requesting a second judicial sale of the property to recover mortgage interest and fees which it had not received from the first judicial sale in February of 2006.  In their motion to dismiss, the NYCB Affiliates represent that this case is currently pending and has not reached a final judgment.

Plaintiffs claim that New York Community Bank, Cantanno and the law firm Forchelli, Curto, Schwartz, Mineo, Carlino and Cohn, LLP negligently and intentionally abused the legal process by filing the New York suit – now pending against them – which seeks a second foreclosure of the property, and negligently and intentionally slandered the title to the property through the suit.  Plaintiffs also sue the NYCB Affiliates for bad faith, common law negligence, negligent misrepresentation, fraud

---

[3](...continued)
Community Bank to recover only the outstanding principal of the mortgage without interest or fees. Cantanno requested that Sheldon sign documents which would obligate him to pay New York Community Bank any sums due under the Vermontys' mortgage which the bank did not receive from the proceeds of the sheriff's sale.

[4]         The New York state court ordered the proceeds to be paid in the following priority: (1) $10,000 to Carmen Vermonty; (2) the mortgage balance to New York Community Bank; (3) $20,148.07 to Centerbank; (4) $422,643.95 to Sheldon; (5) $25 to the New York Environmental Control Board; and (6) the remaining proceeds to Carmen Vermonty.  In December of 2005, Cantanno indicated that the Vermontys owed approximately $95,000 in unpaid principal and approximately $7,000 in interest and fees.  In March of 2006 (after the sheriff's sale in February of that year), Cantanno reaffirmed that the Vermontys owed approximately $95,000 on the principal of the mortgage and $10,000 in interest and fees.

In April of 2006, the sheriff paid New York Community Bank $95,054.47 from the proceeds of the sheriff's sale.  This amount reflected the principal due under the Vermontys' mortgage.  That same month, Cantanno contacted plaintiffs several times, requesting that they pay approximately $10,000 in interest and fees under the mortgage which the distribution of proceeds had not covered.  Cantanno advised plaintiffs that if they did not pay the requested amount, he would file suit to recover it.

by misrepresentation, fraud by silence, common law conspiracy and tortious interference with business relationships. Apparently, these additional claims also stem from the second foreclosure action. The NYCB Affiliates argue that the Court should dismiss plaintiffs' claims (1) under Rule 12(b)(2) for lack of personal jurisdiction; (2) under the abstention doctrine set forth in Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976); and (3) under Rule 12(b)(6) for failure to state a claim.

B.      Personal Jurisdiction

The NYCB Affiliates argue that as nonresidents, plaintiffs cannot establish personal jurisdiction over them. Defendants' personal jurisdiction argument is dispositive of plaintiffs' claims. To obtain personal jurisdiction over nonresident defendants in a diversity action, plaintiffs must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. TH Agric. & Nutrition, LLC v. Ace European Group Ltd., 488 F.3d 1282, 1286-87 (2007).

i.      The Law Of The Forum State

The Kansas long-arm statute, K.S.A. § 60-308(b), permits the exercise of personal jurisdiction over nonresident defendants as follows:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

(A) Transaction of any business within this state;

(B) commission of a tortious act within this state.

K.S.A. § 60-308(b)(1)(A)-(B).[5] Under Kansas law, the long-arm statute is liberally construed to assert

_____

[5]      Subsection (b)(1)(E) permits the exercise of personal jurisdiction where defendants enter
(continued...)

personal jurisdiction over nonresident defendants to the full extent permitted by the Constitution. Merriman v. Crompton Corp., 282 Kan. 433, 459, 146 P.3d 162, 179 (2006). Business is transacted within the state when an individual is within or enters this state in person or by agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires. Anderson v. Heartland Oil & Gas, Inc., 249 Kan. 458, 467, 819 P.2d 1192, 1199 (1991). Kansas law does not require any physical act in the forum state as a prerequisite to personal jurisdiction; the long-arm statute may be triggered by tortious acts outside the forum which cause tortious injury to a resident in the state. J.E.M. Corp. v. McClellan, 462 F. Supp. 1246, 1252 (D. Kan. 1978). The Kansas long-arm statute "specifically requires that the transaction of business or the commission of a tortious act must be in connection with the cause of action in question." Kluin v. Am. Suzuki Motor Corp., 274 Kan. 888, 897, 56 P.3d 829, 836 (2002).

Here, plaintiffs' opposition to defendants' motion to dismiss traces the history of correspondence between themselves and Cantanno. This correspondence includes discussions regarding the Vermonty bankruptcy in 2003, plaintiffs' securities suit against the Vermontys from 2003 to 2005, and the first judicial sale in late 2005 and early 2006. Other than historically, none of these communications are connected to plaintiffs' causes of action – which are premised on the filing of the second foreclosure action against the property. Because the conduct which triggers the Kansas long-arm statute must give rise to plaintiffs' claims, this history of correspondence does not create statutory jurisdiction. The

---

[5](...continued)
into "an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state." K.S.A. § 60-308(b)(1)(E). Although plaintiffs argue that defendants attempted to contract with Sheldon by demanding that he obligate himself to pay outstanding fees and interest on New York Community Bank's mortgage, Subsection (b)(1)(E) does not reach attempts to contract. Because plaintiffs do not suggest that they entered into a contract with the NYCB Affiliates, the Court does not consider Subsection (b)(1)(E) as a basis for statutory jurisdiction.

Court's personal jurisdiction inquiry is therefore limited to the filing of the second foreclosure action.

Plaintiff cites no authority for the proposition that filing a foreclosure action in New York constitutes transaction of business in Kansas, and the Court cannot find statutory jurisdiction on the ground that defendants transacted business in Kansas. On the other hand, plaintiffs allege that defendants tortiously filed a foreclosure action in New York and thereby caused them injury in Kansas. Because Kearns resides in Missouri and merely maintains an office in Kansas, and the alleged injury is apparently unrelated to his law practice, the Court is skeptical that he suffered any injury in Kansas. Accepting plaintiffs' allegations as true, however, and liberally construing the Kansas long-arm statute, the Court assumes without deciding that the NYCB Affiliates' conduct falls within Section 60-308(b)(1)(B) as the commission of a tortious act causing injury within the state.

### ii.  Due Process

Due process permits the Court to exercise both general and specific personal jurisdiction.[6] The specific personal jurisdiction inquiry involves two steps. First, the Court must determine whether defendants have minimum contacts with the forum state such that they should reasonably anticipate being haled into court there. Id. Second, if defendants have minimum contacts, the Court must determine whether its exercise of personal jurisdiction over defendants offends traditional notions of fair play and substantial justice. Id.

---

[6]     General personal jurisdiction exists where defendants' contacts with the forum state are so continuous and systematic that the state may exercise personal jurisdiction over the defendants, even if the suit is unrelated to the defendants' contacts with the state. Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 & n.9 (1984)). Here, the record contains no evidence that the NYCB Affiliates established continuous and systematic contacts in the State of Kansas which would support general personal jurisdiction, and the Court therefore considers only specific personal jurisdiction.

a.    <u>Minimum Contacts</u>

Nonresident defendants have minimum contacts with the forum state when they should reasonably anticipate being haled into court there. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980). Such defendants may reasonably anticipate being subject to suit in the forum state if they have purposefully directed their activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985). The purposeful direction of activities toward residents of the forum state requires out-of-state defendants to commit some act by which they purposefully avail themselves of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws. <u>Id.</u> at 475; <u>see also</u> <u>Far W. Capital, Inc. v. Towne</u>, 46 F.3d 1071, 1079 (10th Cir. 1995) (mere allegation of injury to resident caused by out-of-state defendant does not necessarily establish minimum contacts; court must undertake particularized inquiry regarding extent to which defendant purposefully availed itself of benefits of forum's laws). Purposeful availment requires actions by defendants which "create a substantial connection with the forum state." <u>OMI Holdings, Inc.</u>, 149 F.3d at 1092 (quoting <u>Asahi Metal Indus. Co. v. Superior Court of Cal.</u>, 480 U.S. 102, 109 (1987)). The determination whether nonresident defendants have minimum contacts sufficient to support a court's exercise of personal jurisdiction depends on the particular facts of each case. <u>Benton v. Cameco Corp.</u>, 375 F.3d 1070, 1076 (10th Cir. 2004).

Plaintiffs argue that the NYCB Affiliates purposefully availed themselves of Kansas law by making telephone calls and sending facsimile communications into Kansas regarding the Vermonty bankruptcy in 2003, the judicial sale of the property in February of 2006 and later that year, payment of the outstanding sum due on the mortgage of the property. As noted above, these contacts did not give rise to and, except historically, are not related to plaintiffs' causes of action concerning the filing of the

-10-

second foreclosure. Because plaintiffs' injuries do not arise from the telephone calls and facsimiles, the Court cannot exercise personal jurisdiction over the NYCB Affiliates on the basis of these contacts.

Even if the Court considered these contacts, plaintiffs have not alleged that any defendant except Cantanno originated the communications. Furthermore, "it is well established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." Olsen v. Mapes, 139 Fed. Appx. 54, 57 (10th Cir. 2005) (quoting Far W. Capital, Inc., 46 F.3d at 1077). The exercise of jurisdiction depends on the nature of those telephone calls and facsimiles. Id. (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1418 (10th Cir. 1988)). Here, the relationship between plaintiffs and the NYCB Affiliates concerned property located in New York, mortgaged by a New York mortgagee and subject to New York litigation (the Vermonty bankruptcy action and plaintiffs' state court suit seeking judicial sale of the property). Defendants' communications into Kansas were incidental to the resolution of the bankruptcy proceeding, the completion of the judicial sale and the satisfaction of the mortgage. The quality of these contacts cuts against the Court's exercise personal jurisdiction over the NYCB Affiliates. See Pro Axess, Inc. v. Orlux Distribution, Inc., 428 F.3d 1270, 1278 n.5 (10th Cir. 2005) (in determining purposeful availment, communications traded in advance of litigation afforded less weight so as to encourage informal resolution of disputes; such communication are distinct from contacts intended to build, maintain or salvage business relationships). None of the matters, communications or transactions between plaintiffs and the NYCB Affiliates created a substantial connection to the State of Kansas which would permit the Court to exercise personal jurisdiction over the NYCB Affiliates. See Biederman v. Schnader, Harrison, Siegal & Lewis, 765 F. Supp. 1057, 1061 n.4 (D. Kan. 1991) (ordinary use of mail and telephones to forum state will not meet due process standards unless it forms a substantial connection with the forum); see also Rambo, 839 F.2d at 1418-19 (citing Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985) ("ordinarily use of the mails, telephone, or other

-11-

international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state"); <u>Scullin Steel Co. v. Nat'l Ry. Utilization Corp.</u>, 676 F.2d 309, 314 (8th Cir. 1982) ("use of interstate facilities (telephone, the mail), . . . are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process")).

Plaintiffs further argue that the NYCB Affiliates purposefully availed themselves of Kansas law by "progressing to tortious and fraudulent actions associated with the second foreclosure." Although plaintiffs do not identify the tortious and fraudulent action to which they refer, the Court presumes that they complain of the second foreclosure action which the NYCB Affiliates filed in October of 2006. Plaintiffs apparently argue that this action – which allegedly abused the legal process and slandered their title to the property – is sufficient to establish minimum contacts in Kansas.

Where plaintiffs assert personal jurisdiction on the basis of an out-of-state tort which injured them within the forum state, the tort itself does not create minimum contacts per se. <u>See</u> <u>Far W. Capital, Inc.</u>, 46 F.3d at 1079. To find personal jurisdiction, the Court must make a particularized inquiry into the extent of defendants' purposeful availment of the benefits of the laws of forum state, including an examination of the contacts created by the out-of-state defendants in committing the alleged tort. <u>Id.</u>; <u>see also</u> <u>Trujillo v. Williams</u>, 465 F.3d 1210, 1219-20 (10th Cir. 2006) (not all contact with resident of a forum sufficient to establish minimum contacts with forum; key is purposeful availment within forum state).

Here, the filing of the New York suit created no meaningful contact with Kansas. As noted, the NYCB Affiliates initiated the action in New York state court to procure the sale of property located in New York and satisfy the mortgage of a New York mortgagee. If plaintiffs suffered injury in Kansas by expending time and resources to defend the New York action, it was because they happened to reside or work here. The injury did not arise from the NYCB Affiliates' contacts with the State of Kansas.

-12-

It was not linked to the forum itself, and it is insufficient to create minimum contacts. See Far W. Capital, Inc., 46 F.3d at 1080 (dispute over rights centered out of state which creates only financial injury in forum state not sufficient to establish personal jurisdiction); Institutional Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc., 747 F.2d 448, 456 (8th Cir. 1984) (defendants' contacts with forum state key in determining personal jurisdiction, not contacts with forum resident), cited in Trujillo, 465 F.3d at 1220. Because the focal point of the alleged torts was New York, and the conduct was not expressly aimed at Kansas, any tort which the NYCB Affiliates committed did not create minimum contacts with the State of Kansas necessary to permit the Court to exercise personal jurisdiction. The Court therefore finds that the NYCB Affiliates could not reasonably anticipate being haled into Kansas courts. That the NYCB Affiliates may have had tenuous contacts with a Kansas resident is simply fortuitous; those contacts did not give rise to the causes of action asserted in this case, did not create a substantial connection with Kansas and will not support the Court's exercise of personal jurisdiction over the defendants.

b.      Traditional Notions of Fair Play and Substantial Justice

Even if the Court were to find minimum contacts it would still consider whether the exercise of personal jurisdiction would comport with fair play and substantial justice. TH Agric. & Nutrition, LLC, 488 F.3d at 1287. This determination requires a case-specific inquiry into the reasonableness of the exercise of personal jurisdiction over nonresident defendants with minimum contacts to the forum state. Id. at 1292. The Court assesses reasonableness by weighing (1) the burden on defendants, (2) the forum state's interest in resolving the dispute, (3) plaintiffs' interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. Id. Reasonableness also turns in part on the strength of defendants' contacts

-13-

with the forum state.  Id. (reasonableness prong evokes sliding scale: weaker plaintiffs' showing on minimum contacts, less unreasonableness defendants need to defeat jurisdiction).

Neither party addresses the reasonableness of personal jurisdiction.  Because the minimum contacts in this case – if they exist – are very weak, personal jurisdiction need not be very unreasonable before the Court will decline to exercise jurisdiction.  At best, the second and third factors – the forum state's interest in resolving the dispute and plaintiffs' interest in receiving convenient and effective relief – favor Sheldon, a Kansas resident.  None of the factors appear to favor Kearns, a Missouri resident. With regard to the forum state's interest in resolving the dispute, the State of Kansas arguably has an interest in providing a forum for Sheldon and in applying its laws to his claims.[7]  See id. at 1293. Because this controversy has no substantial connection to the State of Kansas, however, this interest is

---

[7]     This case raises choice of law issues concerning the application of Kansas, Missouri and New York law.  When deciding state law claims under diversity jurisdiction, a federal district court applies the choice of law rules of the state in which it sits.  Koch v. Koch Indus., Inc., 2 F. Supp.2d 1416, 1420 (D. Kan. 1998) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Kansas courts generally apply the First Restatement of Conflicts of Law to choice of law issues.  See ARY Jewelers, L.L.C. v. Krigel, 277 Kan. 464, 481, 85 P.3d 1151, 1161-62 (2004).  For purposes of tort claims, Kansas courts follow the rule of *lex loci delicti* and apply the substantive law of the state where the wrong occurs (i.e. the place of injury).  Ling v. Jan's Liquors, 237 Kan. 629, 634-35, 703 P.2d 731, 735 (1985).
        The complaint is not a model of clarity with regard to the injuries which plaintiffs have allegedly suffered, but they appear to complain of monetary damages stemming from defendants' various tortious acts, including fraud, abuse of process, slander of title and tortious interference.  Under Kansas choice of law rules, in the case of fraud where plaintiffs suffer monetary damages, the law of the place where plaintiffs live at the time of such injury controls.  See Maberry v. Said, 911 F. Supp. 1393, 1399-1400 (D. Kan. 1995) (where out-of-state representations or omissions cause individual to suffer monetary damages in state where he lives, home state is place of injury).  Kansas law is not clear with respect to the place of injury where plaintiffs allege abuse of process, slander of title and tortious interference, but given the similar characteristic of monetary damages alleged, the Court finds that the law of the place of financial consequence controls those claims as well.  Because Sheldon alleges that he felt the financial consequences of defendants' tortious acts in Kansas (where he lives), Kansas is the place of his injury and its law governs his tort claims; because Kearns apparently felt the financial consequences of defendants' alleged tortious acts in Missouri (where he lives), Missouri is the place of his injury and its law governs his tort claims.

-14-

weak. The State of Kansas has no discernable interest in resolving the dispute with regard to Kearns, a Missouri resident who happens to have an office in Kansas. Plaintiffs' interest in receiving convenient and effective relief arguably favors them, but the weight of this factor is also limited. Although Sheldon benefits from pursuing his claims in his home forum, Kearns would enjoy greater convenience and effectiveness if the forum state were Missouri.

On the other hand, the first factor – the burden on defendants – weighs heavily in defendants' favor. Outside of a limited number of telephone calls and facsimiles which are unconnected to this suit, the NYCB Affiliates have confined their actions to the State of New York, making Kansas an unpredictable forum. The cost of defending the action in Kansas is high. The fourth factor – the interstate judicial system's interest in obtaining the most efficient resolution of controversies – also favors defendants. This dispute arises out of the filing of a New York foreclosure action involving property in New York. That action is still pending and New York courts are unquestionably in the best position to conveniently and efficiently resolve the legal issues concerning that foreclosure. This action is a blatant attempt to preempt that pending litigation, and plaintiffs have not demonstrated that this lawsuit serves any judicial interest in efficiently resolving any controversy between the parties. The fifth factor – the shared interest of the several states in furthering fundamental substantive social policies – does not weigh markedly in favor of either plaintiffs or defendants.

On balance, these factors suggest that to exercise personal jurisdiction over the NYCB Affiliates in Kansas would be unreasonable. The relative weakness of their contacts with the forum state relieves them from having to make a strong showing of unreasonableness. Under these circumstances – even if plaintiffs had shown sufficient minimum contacts with Kansas – the exercise of personal jurisdiction over the NYCB Affiliates would not comport with traditional notions of fair play and substantial justice. Accordingly, the Court dismisses for lack of personal jurisdiction plaintiffs' claims against the NYCB

Affiliates.

## II. Plaintiffs' Claims Against The Remaining Defendants

### A. Background

On September 4, 2006, Khanal signed a preliminary offer to purchase the property for $675,000. The Winzone Affiliates tendered the offer to plaintiffs in Kansas and plaintiffs accepted it. The Winzone Affiliates advised plaintiffs that Khanal was pre-qualified to purchase the property and that closing should occur within 30 to 45 days after execution of the contract. The Winzone Affiliates represented to plaintiffs that Khanal had stable credit and could pay $50,000 as a down payment and $100,000 in closing costs.

Some time between September 4 and 14, 2006, plaintiffs and Khanal (through her attorney, David Melo) negotiated a sales contract. Khanal signed the contract and sent it to plaintiffs in Kansas – presumably to Kearns' law office – for final execution. On September 14, 2006, plaintiffs executed the contract in Kansas. The contract, in paragraph 8, contained a "Mortgage Commitment Contingency" which provided that Khanal's obligation to purchase the property was contingent on her ability to secure financing within 30 days, as follows:

> The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before 30 days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney . . . (the "Commitment Date") of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan . . . of $525,000.00 for a term of at least 30 years . . . (the "Commitment"). . . . Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reasons. ***
> Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) [provide] accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees . . . required in connection with each application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lenders(s) to obtain a Commitment. . . . Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof. ***

-16-

If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under paragraph 8.  \*\*\*

If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27 [broker's commissions].

Exhibit A attached to <u>Memorandum Of Law In Support Of Defendants' Motions To Dismiss The Complaint, Or In The Alternative, For Summary Judgment</u> (Doc. #36) filed April 24, 2007 ¶ 8(a)-(b), (d), (f).  On September 15, 2006, the Winzone Affiliates advised plaintiffs that the loan had closed and that the transaction would be completed.  At the same time, the Winzone Affiliates placed a "sold" sign in the front yard of the property and removed the key from the lock box, thus preventing prospective purchasers from examining the property.  The Winzone Affiliates also represented on a multiple listing service that the property was sold.  On September 22, 2006, Melo and Khanal ordered a title policy on the property.  On October 4, 2006, Melo advised plaintiffs that the parties' contract had been sent to a second lender, which plaintiffs took to mean that Khanal was seeking a lower interest rate on her loan.  The same day, Khanal ordered a termite inspection of the property.

On October 7, 2006, plaintiffs instructed the Winzone Affiliates to place a "For Sale By Owner" sign on property and to return the key to the lock box.  On October 10, 2006, the Winzone Affiliates advised plaintiffs that Khanal had secured a loan commitment, was attempting to secure a second loan commitment with a better interest rate, and expected to close on October 20, 2006.  On October 16, 2006, the title insurer advised plaintiffs that no problems had arisen with the title policy or the closing.

Under the contract, the parties were to close on about October 20, 2006 at the law offices of Lau & Associates, P.C. in Flushing, New York.  <u>Id.</u> ¶ 15.  On October 18, 2006, Melo advised plaintiffs that Khanal had no loan commitment and requested an extension of the closing date.  On November 2, 2006,

Melo advised plaintiffs that Network Mortgage, Inc. (a New York mortgage company) and its broker Shams Uddin wanted Khanal to buy the property in her cousin's name and transfer the deed back to herself after closing. Melo also advised plaintiffs that Khanal had recently opened charge accounts which negatively impacted her credit.

On November 7, 2006, Uddin advised plaintiffs that (1) Khanal's husband, Abu Athar, had three accounts in collection, (2) Khanal had obtained a loan commitment, (3) Khanal refused to accept a co-signer to obtain a second loan commitment at a lower interest rate, and (4) Sheldon could co-sign a second mortgage at a lower interest rate with no problem. This was the first time anyone had informed plaintiffs of Athar's involvement in the transaction.[8] The same day, the Winzone Affiliates advised plaintiffs that Khanal had obtained a loan commitment but that because of Athar's credit problems, she needed a co-signer or a second mortgage for five per cent of the purchase price. Sheldon agreed to co-sign the loan and/or the second mortgage, but Khanal refused to move forward with the purchase. On November 7, 2006, Melo advised plaintiffs that Khanal was canceling the contract because she could not qualify for a loan.

The contract described plaintiffs' sole remedy in the event of Khanal's default as follows:

> If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Id. ¶ 23(a). The rider to the contract further provided that

> [i]f Purchaser willfully defaults or willfully fails to carry out any of the provisions of this

---

[8]        During the prospective transaction, Melo and the Winzone Affiliates did not disclose to plaintiffs that (1) Khanal was married to Athar, (2) Athar would be required to co-sign the loan, or (3) Athar had substantial credit problems which might prevent Khanal from receiving a desirable interest rate.

> Contract as set forth herein, the Seller shall have the option to cancel this Contract. Seller shall notify Purchaser's attorney by mail and upon receipt of such notice this agreement shall become null and void and the Seller shall be entitled to retain the deposits paid by Purchaser hereunder as liquidated damages. The Seller reserves the right to bring any legal proceedings or action which may be deemed necessary to protect his interest hereunder all at the sole expense of the Purchaser including and not limited to, attorney fees.

Id. ¶ 38(c). After Melo informed plaintiffs that Khanal would not complete the purchase, plaintiffs requested liquidated damages and advised the escrow agent that they objected to the release of any escrow funds to Khanal.

On November 8, 2006, the Winzone Affiliates advised plaintiffs that Khanal could not obtain a loan commitment under any circumstances and that the transaction could not be completed. That same day, Option One tendered a denial of Khanal's loan application. The denial form did not include a required address, had no legible signature and did not contain any verification of Khanal's good faith effort to secure the loan. On November 9, plaintiffs offered Khanal a contract to transfer the property through deed, but Khanal refused. The same day, the Winzone Affiliates removed the "sold" sign from the front yard of the property and returned the key to the lock box. The property remained listed as "sold" on the multiple listing service until November 18, 2006.

On February 1, 2007, Khanal (through her attorney Rosemarie Klie with the law firm of Sweeney, Gallo, Reich & Bolz, LLP) filed suit in New York state court seeking return of the $50,000 escrow deposit. On April 11, 2007, the New York state court heard Khanal's motion for summary judgment and plaintiffs' motion to dismiss. See Exhibit M attached to Memorandum Of Law In Support Of Defendants' Motions To Dimiss The Complaint, Or In The Alternative, For Summary Judgment (Doc. #36). At this hearing, the court ordered plaintiffs to return the escrow deposit to Khanal. Id. On September 19, 2007, the court granted summary judgment in favor of Khanal and reaffirmed its order

that the escrow deposit be returned to her.[9]  See Exhibit B attached to Plaintiffs' Motion For Relief From

Judgment Or Order Pursuant To FRCP 60(b)(4)(6) With Memorandum In Support (Doc. #74) filed

October 31, 2007.  Meanwhile, on February 16, 2007, plaintiffs sold the property to a third party for

$630,000.

Plaintiffs claim that Khanal and Athar breached the real estate sales contract.  Plaintiffs further

claim that the Winzone Affiliates breached their fiduciary duty under the listing agreement by failing

to convey material information regarding Khanal and blocking other opportunities for plaintiffs to sell

the property.  Plaintiffs further claim that Khanal, Athar, Klie and the law firm of Sweeney, Gallo, Reich

& Bolz, LLP negligently and intentionally abused the legal process by filing suit against them for

purposes of harassment, and negligently and intentionally slandered the title to the property through

---

[9]      Under Rule 60(b), Fed. R. Civ. P., plaintiffs ask the Court to find that the New York state
court judgment is void.  Plaintiffs' request is patently frivolous.  Rule 60(b) permits the Court to grant
relief from final judgments which are void, but does not authorize the Court to grant relief from the New
York state court judgment.  See 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal
Practice and Procedure § 2865 (2d ed. 1995) (Rule 60(b) relief obtained in district court which rendered
judgment or district court in which judgment of another district court is registered).  Further, the Court
generally lacks jurisdiction to void state court judgments.  See Bolden v. City of Topeka, 441 F.3d 1129,
1139 (10th Cir. 2006) (citing Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923)) (no federal court other
than Supreme Court can entertain proceeding to reverse or modify judgment of state court).  Elaborating
on Rooker, the Tenth Circuit has clearly explained that "voiding a state court judgment [is] the exclusive
province of the Supreme Court in the exercise of its appellate jurisdiction.  For a district court to void
a state court judgment would be a usurpation of the authority of the Supreme Court."  Id.  Because the
Court does not have authority to declare the New York state court judgment void, it overrules plaintiffs'
motion for relief from that judgment.
        Although the Court relies on Rooker, it does not purport to invoke the Rooker-Feldman doctrine.
This doctrine, taken from Rooker and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462
(1983), strips the Court of subject matter jurisdiction to hear cases brought by state court losers
complaining of injuries caused by state court judgments rendered before the district court proceeding
commenced and inviting district court review and rejection of those judgments.  Exxon Mobil Corp. v.
Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  Although a full-blown Rooker-Feldman
application is not appropriate in this case, see id. at 292 (in parallel federal and state court proceedings,
Rooker-Feldman not triggered simply by entry of state court judgment), plaintiffs' request that the Court
void the New York state court judgment raises the fundamental jurisdictional question which Rooker
resolved.

such action. Plaintiffs also assert claims against all defendants for bad faith, common law negligence, negligent misrepresentation, fraud by misrepresentation, fraud by silence, common law conspiracy and tortious interference with business relationships.

B.     The Khanal Affiliates

Plaintiffs claim that (1) Khanal breached the contract for sale of the property; (2) Khanal, Klie and Sweeney, Gallo, Reich & Bolz, LLP negligently and intentionally abused the legal process by filing suit against plaintiffs for purposes of harassment, and negligently and intentionally slandered the title to the property through such action; and (3) the Khanal Affiliates (including Melo, the law firm of David J. Melo, Esq., Uddin and Network Mortgage, Inc.) committed bad faith, common law negligence, negligent misrepresentation, fraud by misrepresentation, fraud by silence, common law conspiracy and tortious interference with business relationships. The Khanal Affiliates argue that the Court should dismiss plaintiffs' claims against them (1) under Rule 12(b)(1) for lack of subject matter jurisdiction; (2) under Rule 12(b)(2) for lack of personal jurisdiction; (3) under Rule 12(b)(3) for improper venue; and (4) under Rule 12(b)(6) for failure to state a claim.

i.     Subject Matter Jurisdiction

The Khanal Affiliates argue that the Court lacks subject matter jurisdiction because plaintiffs' claims do not meet the amount in controversy necessary to establish diversity jurisdiction. Federal courts may exercise jurisdiction over an action involving parties of diverse citizenship "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). For purposes of determining the amount in controversy, the sum which plaintiffs claim controls if the claim is apparently made in good faith. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). When federal subject matter jurisdiction is challenged based on the amount in controversy requirement, plaintiffs must show that it does not appear to a legal certainty that

they cannot recover at least $75,000. <u>LDCircuit, LLC v. Sprint Commc'ns Co.</u>, 364 F. Supp.2d 1246, 1249-50 (D. Kan. 2005) (citing <u>Watson v. Blankinship</u>, 20 F.3d 383, 386 (10th Cir. 1994)). In other words, plaintiffs must demonstrate that it is not legally certain that their claims are less than the jurisdictional amount. <u>Woodmen of World Life Ins. Soc'y v. Manganaro</u>, 342 F.3d 1213, 1216 (10th Cir. 2003). The legal certainty standard is strict; dismissal is generally warranted only where (1) a contract limits the possible recovery, (2) the law limits the amount recoverable or (3) plaintiffs commit an obvious abuse of federal court jurisdiction. <u>Id.</u> at 1216-17.

For purposes of federal jurisdiction, the determination of the value of the matter in controversy is a federal question to be decided under federal standards. <u>Gerig v. Krause Publ'ns, Inc.</u>, 58 F. Supp.2d 1261, 1264 (D. Kan. 1999) (citing <u>Horton v. Liberty Mut. Ins. Co.</u>, 367 U.S. 348, 352 (1961)). In making this determination, federal courts must look to state law to determine the nature and extent of the right to be enforced in a diversity case. <u>Id.</u> (citing <u>Horton</u>, 367 U.S. at 352-53). Every separate and distinct claim must individually meet the amount in controversy. <u>Watson</u>, 20 F.3d at 386. Here, plaintiffs assert a breach of contract claim and a variety of tort claims.

In their complaint, plaintiffs allege the amount in controversy as follows:

> The amount in controversy exceeds $500,000.00, given the amount of liquidated damages is $50,000.00, the loss of value by defendants['] actions is $45,000.00, costs and attorney fees will exceed $50,000.00, slander of title and abuse of process exceeds $100,000.00 and the improper conduct occasioned by defendants will allow for $500,000.00 to $1,000,000.00 in punitive damages.

<u>Complaint</u> (Doc. #1) filed March 14, 2007 ¶ 17. As an initial matter, the Court notes that plaintiffs have not provided damage estimates for any claims other than breach of contract, slander of title and abuse of process.[10] Accordingly, these are the only claims on which the Court may base subject matter

---

[10] The record contains no evidence of the amount of damages which plaintiffs have suffered
(continued...)

jurisdiction.[11]  See LDCircuit, 364 F. Supp.2d at 1263 (where plaintiff fails to provide damage estimate

on claim, such claim may not establish subject matter jurisdiction).

a.    Plaintiffs' Breach of Contract Claim

Plaintiffs claim that Khanal breached the real estate contract, apparently by

failing to provide documentation regarding her efforts to obtain financing.  As liquidated damages under

Section 23(a) of the real estate contract, plaintiffs claim actual damages of $50,000 – the amount of

Khanal's escrow deposit.  This sum, by itself, obviously falls short of the jurisdictional minimum.  In

addition to liquidated damages, plaintiffs claim $45,000 in lost value, i.e., the difference in Khanal's

contract price of $675,000 and the $630,000 price for which plaintiffs eventually sold the property.

Plaintiffs argue that the total of the liquidated damages and lost value ($95,000) exceeds the

jurisdictional minimum.  Under the contract, however, plaintiffs are not entitled to both liquidated

damages and lost value.  Paragraph 23 of the contract explicitly limits plaintiffs' remedy to retention

of the escrow deposit as liquidated damages.  Under New York law, a reasonable liquidated damages

---

[10](...continued)
on the claims for bad faith, negligence, fraud and tortious interference.  The complaint vaguely states
that defendants' conduct has caused plaintiffs "substantial damages" or "mounting damages."  Because
any estimate of damages which plaintiffs may have suffered from these torts would be pure speculation
at this point, plaintiffs' claims of negligence, fraud and tortious interference are insufficient to establish
the necessary amount in controversy.  See Gerig, 58 F. Supp.2d at 1264 (citing Gibson v. Jeffers, 478
F.2d 216, 221 (10th Cir. 1973)) (allegations need not be specific, but plaintiffs must allege sufficient
facts to convince court that recoverable damages will bear reasonable relation to minimum jurisdictional
floor); Prosoco, Inc. v. Stonewall Surplus Lines Ins. Co., No. 88-2569, 1989 WL 58989, at *1 (D. Kan.
May 9, 1989) (speculative damages which plaintiff may suffer insufficient to satisfy amount in
controversy requirement for diversity jurisdiction).

[11]       Melo, the law firm of David J. Melo, Esq., Uddin and Network Mortgage, Inc. are not
named in the breach of contract claim or the abuse of process and slander of title claims which might
establish a sufficient amount in controversy.  Plaintiffs' claims against these parties are limited to bad
faith, negligence, fraud and tortious interference which are not properly plead as a basis for subject
matter jurisdiction.  The Court therefore finds that plaintiffs' claims against these defendants should be
dismissed for lack of subject matter jurisdiction.

provision precludes recovery of actual damages.[12]  See 195 Lombardy Street, L.L.C. v. McCarthy, 831 N.Y.S.2d 355 (Table), 2006 WL 3076563, at *2 (N.Y. Sup. Ct. Jan. 4, 2006) (because liquidated damages intended to prevent questions as to amount of damages, reasonable provision precludes actual damages).  Plaintiffs make no argument that the liquidated damages clause is unreasonable, and the Court finds that plaintiffs are not entitled to actual damages in lieu of or in addition to liquidated damages.

Even if both actual and liquidated damages were available, plaintiffs would not be entitled to both.  Under New York law, "[w]here a buyer wrongfully refuses to close title under a contract for the sale of real property, '[s]eller's damages are measured by the difference between the purchase price and the market value of the property.'  As an alternative, seller may retain the buyer's down payment as liquidated damages."  1776 Assocs. Corp. v. Broadway W. 57th St. Assocs., 585 N.Y.S.2d 316, 317 (N.Y. App. Div. 1992) (internal citations omitted); see also Restatement (Second) of Contracts § 347 cmt. a (1979) (basic measure of damages "subject to the agreement of the parties, as where they provide for liquidated damages").  In other words, even absent the liquidated damages clause, plaintiffs could claim either lost value or liquidated damages, but not both.

Plaintiffs argue that their liquidated damages may be augmented with attorney fees to reach the jurisdictional minimum.  Where litigants have a right to attorney fees based on contract, statute or other legal authority if they prevail in the litigation, a reasonable estimate of those fees may be included in

---

[12]       Under Kansas choice of law rules, the measure of contract damages is a substantive issue "determined by the law of the place of performance," ARY Jewelers, L.L.C. v. Krigel, 277 Kan. 464, 482, 85 P.3d 1151, 1162 (2004), which is "the state where, either by specific provision or interpretation of the language of the promise, the promise is to be performed," Restatement of Conflict of Laws (First) § 355 (1934).  Here, Section 15 of the real estate contract specified that the parties were to close on the Property in New York, making it the place of performance.  New York law therefore governs the measure of contract damages in this case.

determining whether the jurisdictional minimum is satisfied. <u>Gerig</u>, 58 F. Supp.2d at 1264. Here, Section 38(c) of the real estate contract allows plaintiffs to recover attorney fees in any action brought to protect their contractual interests. Because Kearns is actually representing himself and Sheldon in this case, however, it is not clear that plaintiffs will incur any attorney fees. Further, even if this action triggered plaintiffs' right to attorney fees, they have given the Court no sworn estimate of such fees. The Court therefore cannot include attorney fees in its calculation of the amount in controversy.[13] <u>See</u> <u>LDCircuit</u>, 364 F. Supp.2d at 1260-61 (failure to offer estimate of attorney fees prevents court from including such fees in calculation of damages for purposes of amount in controversy).

Plaintiffs argue that their liquidated damages may be augmented by their prayer for $500,000 in punitive damages. Where plaintiffs may legally recover punitive damages, such damages are properly included in the calculation of the amount in controversy. <u>Burrell v. Burrell</u>, 229 F.3d 1162 (Table), 2000 WL 1113702, at *2 (10th Cir. Aug. 7, 2000) (citing <u>Bell v. Preferred Life Assurance Soc'y</u>, 320 U.S. 238, 240 (1943)). Under New York law, punitive damages are not recoverable on a breach of contract claim unless they are necessary to vindicate a public right. <u>Volt Delta Res. LLC v. Soleo Commc'ns Inc.</u>, 816 N.Y.S.2d 702 (Table), 2006 WL 800791, at *6 (N.Y. Sup. Ct. Mar. 29, 2006). Here, the complaint does not suggest that plaintiffs seek to vindicate any public right. As matter of New

---

[13]    <u>LDCircuit</u> suggests that under certain circumstances, the Court could infer a reasonable amount of attorney fees in calculating the amount in controversy. 364 F. Supp.2d at 1261. Even if the Court were inclined to estimate plaintiffs' attorney fees (including *pro se* attorney fees) without evidence to that effect, it notes that plaintiffs would not be entitled to fees incurred on all claims. The only authority for fees in this case is the real estate contract, but plaintiffs make no effort to segregate the fees incurred in the prosecution of their contract claim from the fees incurred in the prosecution of their tort claims. Because plaintiffs assert 12 separate tort claims and only one contract claim, it appears that the bulk of fees would not be recoverable under the real estate contract. Moreover, plaintiffs' contract claim involves a discrete dispute regarding Khanal's efforts to obtain a loan commitment and is not overly complex. Under these circumstances, the Court doubts that plaintiffs could reasonably incur $25,000 in attorney fees to surpass the $75,000 threshold on their contract claim. It therefore declines to engage in speculation on the amount of a potential fee award.

York law, then, plaintiffs may not recover punitive damages on their breach of contract claim, and the Court will not augment that claim with punitive damages in order to satisfy the jurisdictional minimum.

On the evidence presented by plaintiffs, the Court finds that the amount in controversy on the breach of contract claim is no more than $50,000, which is insufficient to satisfy the jurisdictional minimum under Section 1332(a).

     b.  <u>Plaintiffs' Abuse of Process and Slander of Title Claims</u>

     Plaintiffs allege that Khanal (through Klie and Sweeney, Gallo, Reich & Bolz, LLP) abused the legal process by filing suit against them for the purpose of harassment, and slandered title to the property through such action. Defendants argue that the Court should not consider these tort claims because the parties' dispute is limited by their contractual relationship. <u>See</u> <u>Hammer Realty Group, Inc. v. Cont'l W. Ins. Co.</u>, No. 99-1355-JTM, 2000 WL 1744932, at *2 (D. Kan. Nov. 3, 2000) (existence of contractual relationship bars assertion of tort claims covering same subject matter as contract). To properly allege both contract and tort claims, plaintiffs must allege tortious acts which are sufficiently independent of the acts giving rise to the alleged breach of contract. <u>Id.</u> Here, plaintiffs' breach of contract claim is premised on Khanal's failure to obtain financing, and their abuse of process and slander of title claims arise out of her lawsuit to recover her $50,000 down payment after the parties cancelled the contract. These claims do not share a common factual basis; the alleged abuse of process is independent of the creation, execution and performance of the real estate contract. The Court therefore considers plaintiffs' abuse of process and slander of title claims separate from their breach of contract claim.

    As noted above, on these claims plaintiffs allege actual and punitive damages above the jurisdictional amount. For purposes of establishing the amount in controversy, however, the Court may

disregard any cause of action for which the facts show that recovery is a legal impossibility. See LDCircuit, 364 F. Supp.2d at 1261-63, & n.3 (legal impossibility of claim negates good faith assertion of claim and amounts to obvious abuse of federal court jurisdiction). As noted above, Sheldon's abuse of process and slander of title claims are governed by Kansas law and Kearns' abuse of process and slander of title claims are governed by Missouri law. Defendants' do not specifically challenge whether plaintiffs have sufficiently stated their claims. Because the sufficiency of these claims impacts the Court's subject matter jurisdiction, however, the Court independently considers whether recovery on these claims is legally possible.

Plaintiffs' abuse of process claim is premised on the lawsuit which Khanal filed for return of the $50,000 deposit. To recover for abuse of process under Kansas and Missouri law, plaintiffs must show that defendants employed an illegal, improper or perverted use of civil process. See Caldwell-Baker Co. v. Tideman, 149 P.3d 894 (Table), 2007 WL 136029, at *7 (Kan. Ct. App. Jan. 19, 2007) (abuse of process contemplates overt act in addition to initiation of lawsuit; mere filing of lawsuit, even for improper purpose, not proper basis for abuse of process claim); Ritterbusch v. Holt, 789 S.W.2d 491, 493 (Mo. 1990) (en banc) (abuse of process claim must set forth use of process not warranted or authorized by process). Here, the complaint does not allege that defendants undertook some perverted use of the legal process. The record contains a copy of the complaint which Khanal filed against plaintiffs and a copy of the summons commanding their answer.[14] See Exhibit I attached to Memorandum Of Law In Support Of Defendants' Motions To Dismiss The Complaint, Or In The Alternative, For Summary Judgment (Doc. #36). The complaint simply sought the return of Khanal's $50,000 down payment. From the face of these documents, the Court can discern no perversion of the

---

[14]     In their complaint, plaintiffs asked the Court to take judicial notice of this action, which they incorporated by reference. See Complaint (Doc. #1) ¶ 47.

legal process. Indeed, the fact that the New York state court entered summary judgment and ordered plaintiffs to return the deposit suggests that the lawsuit was perfectly legitimate. Under these circumstances, it appears that plaintiffs' abuse of process claim must fail as a matter of law.

Plaintiffs' slander of title claim is also premised on Khanal's lawsuit to recover the $50,000 deposit. Should plaintiffs' abuse of process claim fail as a matter of law, their slander of title claim must also fail. To recover for slander of title under Kansas and Missouri law, plaintiffs must show that defendants maliciously published false words which diminished the value of plaintiffs' property in the eyes of third parties. See Gilreath v. L-M Funding, L.L.C., 105 P.3d 279 (Table), 2005 WL 283610, at *7 (action for slander of title consists of malicious publication of false statement derogatory to plaintiffs' title which causes diminished value of plaintiffs' property); V.J.M. Assocs., Inc. v. Gilmore, 44 S.W.3d 440, 441 (Mo. Ct. App. 2001) (slander of title involves malicious publication of false words which cause pecuniary loss or injury). As a matter of Kansas law, one who files a lis pendens action does not slander title without evidence that the action was wrongful or false. Gilreath, 2005 WL 283610, at *7. Similarly, as a matter of Missouri law, representations which support a slander of title claim must be made without legal justification or excuse. V.J.M. Assocs., Inc., 44 S.W.3d at 441. Because the New York state court ordered plaintiffs to return the deposit in Khanal's lis pendens action, it appears that her lawsuit was not wrongful or without legal justification. Moreover, plaintiffs have not alleged that the lis pendens action diminished the perceived value of the property. It therefore appears that plaintiffs' slander of title claim must also fail as a matter of law.

Because the facts of this case suggest that it is not legally possible for plaintiffs to recover on their abuse of process and slander of title claims, the Court orders plaintiffs to show good cause in writing on or before **December 12, 2007**, why it should not disregard these claims for purposes of determining the amount in controversy and dismiss for lack of subject matter jurisdiction plaintiffs'

claims against Khanal, Klie and Sweeney, Gallo, Reich & Bolz, LLP.[15] If necessary after resolving its

subject matter jurisdiction, the Court will consider the remaining facets of defendants' motion to

dismiss.

C.    Option One

Plaintiffs claim that Option One (1) tendered a fraudulent denial of Khanal's loan application

in support of a conspiracy to avoid the real estate contract, and (2) committed negligence and tortious

interference.    In its motion to dismiss, Option One incorporates by reference the NYCB Affiliates

argument that the Court should abstain under Colorado River, and the Khanal Affiliates arguments that

the Court should dismiss plaintiffs' claims (1) under Rule 12(b)(3) for improper venue, and (2) under

Rule 12(b)(6) for failure to state a claim.    The venue argument is dispositive of plaintiffs' claims.

Under 28 U.S.C. 1391(a)(2), venue in diversity cases is proper in any judicial district where "a

substantial part of the events or omissions giving rise to the claim occurred."[16] In applying this standard,

_____

[15]    The Court is wholly unimpressed with plaintiffs' advocacy in this case.  Many of
plaintiffs' arguments are fragmented, legally unsupported and generally unprofessional.  Among other
things, for example, plaintiffs suggest that the New York state court engaged in an "out-right lynching"
of Sheldon's case and intended to cause him "certain death in some form."  See Response/Memorandum
In Opposition To Defendants' Motion To Dismiss Or Motion For Summary Judgment (Doc. #39) filed
May 10, 2007 at 26, 29.  This is not the first court to take issue with plaintiffs' advocacy.  In Sheldon's
action against the Vermontys – in which Kearns acted as counsel – both the district court and the Tenth
Circuit commented on his poor advocacy.  See Sheldon v. Vermonty, 246 F.3d 682 (Table), 2000 WL
1774038, at *6 (10th Cir. Dec. 4, 2000) (poor quality of plaintiff's advocacy caused significant
expenditure of judicial resources; without significant improvement in quality of filings, case vulnerable
to subsequent legal challenge); Sheldon v. Vermonty, 53 F. Supp.2d 1157, 1171 (D. Kan. 1999) (third
amended complaint "verges on . . . virtually incomprehensible").  In light of the poor quality of
plaintiffs' pleadings to this point, the Court limits plaintiffs' response to the show cause order to ten
pages.

[16]    Venue may also be proper in a judicial district (1) where any defendant resides, if all
defendants reside in the same state; (2) a substantial part of property that is the subject of the action is
situated; or (3) where any defendant is subject to personal jurisdiction at the time the action is
commenced, if there is no other district in which the action may otherwise be brought.  See generally
(continued...)

-29-

the Court must decide whether defendant's forum activities played a substantial role in the circumstances leading to plaintiffs' claims. <u>Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.</u>, 434 F. Supp.2d 1051, 1060 (D. Kan. 2006). In other words, defendant's forum activities must have been events significant to plaintiffs' claims. <u>Id.</u> Plaintiffs bear the burden to show that venue is proper as to each claim and each defendant. <u>B-S Steel of Kan., Inc. v. Tex. Indus., Inc.</u>, 229 F. Supp.2d 1209, 1223 (D. Kan. 2002) (citing <u>Gwynn v. TransCor Am., Inc.</u>, 26 F. Supp.2d 1256, 1261 (D. Colo. 1998)).

Option One argues that it had no contact with Kansas in the course of the events which gave rise to plaintiffs' claims. In support of this contention, Option One submits the declaration of assistant vice president Timothy Wilder, which states that

> [o]n or about November 7, 2006, co-defendant Network Mortgage, Inc., submitted a loan to one of Option One's New York branches. The loan application was submitted on behalf of co-defendant Tara Khanal ("Khanal") in connection with an Agreement to purchase 148-18 Laburnum Avenue, Flushing, New York ("Agreement"). The loan application was processed solely in New York and was denied on or about November 8, 2006. Option One has no contact with anyone in Kansas with respect to the pertinent loan application.

<u>Declaration Of Timothy Wilder</u>, attached as Exhibit 1 to <u>Motion To Dismiss With Supporting Memorandum</u> (Doc. #40) ¶ 4. Plaintiffs respond that the allegations of the complaint are sufficient to establish venue within Kansas. With regard to Option One, the complaint alleges that

> Option One Mortgage Corporation . . . tendered a denial letter . . . without any supporting documentation at the request of or in support of the conspiracy of defendants to deceive plaintiffs into believing that based upon unknown information after several weeks that Khanal's loan application to them was denied. Discovery will prove that this denial letter was based upon information that was substantially different than what was proffered shortly after September 19, 2006 that occasioned a commitment from a lender that will be fully disclosed through discovery. Discovery will prove how defendants all worked in concert to deny the return of the liquidated damages for plaintiffs. The denial

---

[16](...continued)
28 U.S.C. § 1391 (setting forth additional bases of venue in diversity actions). None of these grounds apply in this case.

document was sent to plaintiffs in Kansas.

Complaint (Doc. #1) ¶ 9.[17]

Although the complaint alleges that someone sent the Option One denial letter to plaintiffs in Kansas, it does not allege that Option One sent the denial letter or otherwise had any contact with plaintiffs in Kansas. On the motion to dismiss for improper venue, the Court must accept plaintiffs' allegations as true only to the extent that they are uncontroverted. See Mohr, 434 F. Supp.2d at 1058 (on motion to dismiss for improper venue, uncontroverted allegations taken as true; conflicting affidavits resolved in favor of plaintiff if plaintiff's evidence sufficient to withstand contrary showing by moving party). Given plaintiffs' failure to rebut Wilder's declaration that Option One processed Khanal's loan application exclusively in New York and had no contact with anyone in Kansas, the Court cannot infer that Option One sent its denial letter directly to Kansas. The record contains no evidence that Option One had any contact with Kansas in the course of events giving rise to this case. Under these circumstances, dismissal of plaintiffs' claims against Option One for improper venue is appropriate. See Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. P'ship, 817 F. Supp. 899, 904 (D. Kan. 1993) (where defendant submits affidavit stating that it provided its services exclusively in another state and had no contact with plaintiffs, and plaintiffs do not refute those facts, venue cannot be found on basis of substantial acts within forum). The Court therefore finds that plaintiffs' claims against Option One should be dismissed under Rule 12(b)(3) for improper venue.

D.    The Winzone Affiliates

Plaintiffs claim that Wong and Winzone Realty, Inc. breached their fiduciary duties as agents

---

[17]    Plaintiffs also cite paragraphs 8, 38-39, and 54-67 in response to Option One's venue argument. Many of these allegations do not mention Option One, and those that do are not significantly different from paragraph 9.

in the sale of the property. Plaintiffs also assert claims for bad faith, common law negligence, negligent misrepresentation, fraud by misrepresentation, fraud by silence, common law conspiracy and tortious interference with business relationships. The Winzone Affiliates argue that the Court should dismiss plaintiffs' claims (1) under Rule 12(b)(2) for lack of personal jurisdiction; and (2) under Rule 12(b)(5) for insufficient service of process.

i.    Personal Jurisdiction

The Winzone Affiliates argue that the Court lacks jurisdiction over them as nonresident defendants. Again, the Court's personal jurisdiction inquiry involves consideration of the Kansas long-arm statute and the due process clause of the Fourteenth Amendment.

a.    Law of the Forum State

As noted above, the Kansas long-arm statute permits the exercise of personal jurisdiction over nonresidents in any cause of action arising from the transaction of any business within the state or commission of a tortious act within the state. K.S.A. § 60-308(b)(1)(A)-(B). Here, plaintiffs complain that the Winzone Affiliates breached their fiduciary duty as real estate agents and made fraudulent representations into Kansas regarding Khanal's ability to purchase the property. As noted above, Kansas courts liberally construe the "transaction of business" under the long-arm statute to include any attempt to effectuate with a resident a purpose intended to improve one's economic condition, and the "commission of a tortious act" under the long arm statute to include out-of-state acts which cause injury in Kansas. See Anderson, 249 Kan. at 467, 819 P.2d at 1199 (transaction of business includes attempts to effectuate with resident purpose to improve economic condition); J.E.M. Corp., 462 F. Supp. at 1252 (commission of tortious act includes out-of-state acts which cause injury to resident in forum state). Presumably, the Winzone Affiliates would have received an agent's commission on the sale of the property and they intended to improve their economic condition by negotiating with plaintiffs

to execute the sales contract in Kansas. This qualifies as the transaction of business under the Kansas long-arm statute. Moreover, plaintiffs allege economic injury in Kansas as a result of defendants' alleged out-of-state tortious conduct. This qualifies as the commission of a tortious act under the long-arm statute.

b.      Due Process

As noted above, the Court's due process inquiry involves a two-step analysis which considers (1) whether defendants have minimum contacts with the forum state such that they should reasonably anticipate being haled into court there, and (2) whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. TH Agric. & Nutrition, LLC, 488 F.3d at 1287.

1.      Minimum Contacts

The complaint alleges that the Winzone Affiliates acted as the listing agent of the property and communicated with plaintiffs in Kansas regarding the sale of the property. With regard to the transaction between plaintiffs and Khanal, the complaint alleges that the Winzone Affiliates tendered Khanal's preliminary offer to plaintiffs in Kansas and advised plaintiffs that Khanal was prequalified to purchase the property. The Winzone Affiliates further represented to plaintiffs that Khanal had no credit issues and did not disclose that Khanal was married to Athar, who had substantial credit problems and would sign the loan. Throughout the negotiation between plaintiffs and Khanal, the Winzone Affiliates allegedly advised plaintiffs that Khanal had received a loan commitment to buy the property.

Contacts with the forum state are sufficient to create personal jurisdiction where defendants purposefully direct their activities at residents of the forum and plaintiffs' claims arise out of or result from actions by defendants that create a substantial connection with the forum. Burger King Corp.,

-33-

471 U.S. at 472. Here, in serving as plaintiffs' listing agent, the Winzone Affiliates allegedly communicated with plaintiffs in Kansas in an attempt to complete the real estate transaction for which they would receive a commission. This conduct is sufficient for the Court to find that the Winzone Affiliates purposefully availed themselves of Kansas law. See TH Agric. & Nutrition, LLC, 488 F.3d at 1287-88 (citing Burger King Corp., 471 U.S. at 473) (parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state subject to regulation and sanctions in that state for consequences of their activities); Rambo, 839 F.2d at 1420 (purposeful availment generally requires affirmative conduct by defendant which allows or promotes transaction of business within forum state). Moreover, plaintiffs allege that the Winzone Affiliates breached their fiduciary duties and committed various torts by making fraudulent representations and omissions in their communications with plaintiffs. Because plaintiffs complain of the substance of the communications into Kansas, their claims arise directly out of these contacts with the forum. See Bradshaw v. Baptiste, 23 F. Supp.2d 1236, 1242 (D. Kan. 1998) (allegations of fraud and misrepresentation stemming directly from correspondence in forum state sufficient to satisfy "arising out of" element of minimum contacts analysis). Under these circumstances, plaintiffs have alleged minimum contacts sufficient for the exercise of personal jurisdiction over the Winzone Affiliates.

2.      Traditional Notions of Fair Play and Substantial Justice

Although the parties do not discuss this aspect of the due process inquiry, the Court briefly considers the issue. As noted above, this step of the analysis requires the Court to balance the following factors: (1) the burden on defendants, (2) the forum state's interest in resolving the dispute, (3) plaintiffs' interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. TH Agric. & Nutrition, LLC,

488 F.3d at 1287. With regard to the Winzone Affiliates, these factors would weigh much the same as described above with regard to the NYCB Affiliates. Here, however, the Winzone Affiliates have much greater contacts than the NYCB Affiliates had – in the form of business negotiations and allegedly fraudulent communications within the forum state. Given these significant contacts, the unreasonableness of exercising personal jurisdiction must be much higher before the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. See Pro Axess, Inc., 428 F.3d at 1280 (citing Burger King Corp., 471 U.S. at 477) (where court finds that defendants purposefully directed activity at forum state, defendant seeking to defeat personal jurisdiction must present compelling case of unreasonableness). The Court cannot find such a high level of unreasonableness.

Because the Court finds that the Winzone Affiliates have sufficient minimum contacts with Kansas and that the exercise of personal jurisdiction over them would not offend traditional notions of fair play and substantial justice, the Court may properly exercise personal jurisdiction over the Winzone Affiliates.

ii.     Service Of Process

The Winzone Affiliates argue that the Court should dismiss plaintiffs' complaint for insufficient service of process because Kearns (1) acted as process server, and (2) did not serve Winzone Realty, Inc. through an authorized agent.

a.     Service by a Party to the Action

The Winzone Affiliates argue that service by Kearns – a party to the action – is improper under Rule 4, Fed. R. Civ. P. Rule 4 provides that "[s]ervice may be effected by any person who is not a party and who is at least 18 years of age." Fed. R. Civ. P. 4(c)(2). Although the federal rules do not permit service by a party, plaintiffs argue that Kansas law does permit such service.

-35-

Generally, under Kansas law, service on out-of-state defendants may be made in the same manner as service on in-state defendants, which includes service by a party to the action. See K.S.A. § 60-308(a)(2) (referencing K.S.A. § 60-303(b) which prescribes service by the sheriff "unless a party . . . elects to undertake responsibility for service"). More specifically, where plaintiffs intend to serve an out-of-state party by certified mail, Kansas law provides that, "[t]he party or party's attorney shall cause a copy of the process . . . to be placed in a sealed envelope addressed to the person to be served . . . and the sealed envelope placed in the custody of the person or entity effecting delivery." K.S.A. § 60-308(d)(2). Kansas law further provides that, "[i]f the sealed envelope is returned with an endorsement showing refusal to accept delivery, the party or party's attorney may send a copy of the process . . . by first-class mail addressed to the party to be served." K.S.A. § 60-308(d)(5).

Here, plaintiff Kearns served Wong and Winzone Realty, Inc. by certified mail. Although Kearns is a party in the case and personally mailed the processes, Section 60-308(d)(2) explicitly permits this manner of service. After the post office returned the certified mail addressed to Wong – marked as refused – Kearns mailed the process to Wong by first-class mail, which Section 60-308(d)(5) explicitly permits. Because Rule 4 permits service of process which complies with state law, the Court cannot find that service of process is insufficient because Kearns is a party to the action. See Fed. R. Civ. P. 4(e)(1) (service may be effected pursuant to law of state in which district court located); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1089.1 (3d ed. 2002) ("If the relevant state law does permit service by a party or minor, Rule 4(e)(1) and not Rule 4(c)(2) authorizes service by such an individual pursuant to state law in a federal court action.").

b.      Service on Winzone Realty, Inc.

The Winzone Affiliates argue that plaintiffs did not properly serve Winzone Realty, Inc. through an authorized agent. Rule 4(h) governs service of process upon corporations.

-36-

Under Rule 4(h), plaintiff may effect service upon a corporation pursuant to the methods prescribed by applicable state law or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." Fed. R. Civ. P. 4(h)(1). With regard to applicable state law, plaintiffs may comply with either the law of the state in which the Court is located (Kansas) or the state in which service was effected (New York). See id. (referencing Fed. R. Civ. P. 4(e)(1)). In addition to the methods described in Rule 4(h)(1), Kansas law permits service upon a foreign corporation through its resident agent or – where no resident agent has been appointed – through the secretary of state. K.S.A. § 60-304(f). Under New York law, service upon a corporation may be made to "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service," N.Y. C.P.L.R. 311, or through the corporation's registered agent or the secretary of state, N.Y. Bus. Corp. § 306(a)-(b).

The Court previously considered this argument on plaintiffs' motion for entry of default, and noted that plaintiffs had not met their burden to demonstrate sufficient service on Winzone because their motion and supporting affidavit did not identify the individual who received the summons and complaint. See Memorandum And Order (Doc. #65) filed August 1, 2007 at 5-6. As noted above, on a motion to dismiss, plaintiffs continue to bear the burden of demonstrating sufficient service. Bernard, 1994 WL 171732, at *1. They have offered no further evidence, however, to suggest that they properly served Winzone Realty, Inc. through an authorized agent, officer, director, cashier or other person who might properly accept service at its office.[18] The Court therefore finds that service on Winzone Realty,

---

[18]     The Court notes that the Winzone Affiliates first raised this service of process argument
(continued...)

Inc. is insufficient under Rule 4.

Generally, when the Court finds that service is insufficient but curable, it should quash service and give plaintiff an opportunity to re-serve defendant. See Gregory v. U.S. Bankr. Court, 942 F.2d 1498, 1500 (10th Cir. 1991), cert. denied, 504 U.S. 941 (1992); Pell v. Azar Nut Co., 711 F.2d 949, 950 n.2 (10th Cir. 1983). Here, as described below, the Court is not satisfied that it has subject matter jurisdiction over plaintiffs' claims against Winzone Realty, Inc. Should the Court ultimately find that it does have subject matter jurisdiction over such claims, plaintiffs may within **14 days** of the Court's resolution of the orders to show cause, re-serve Winzone Realty, Inc. pursuant to Rule 4 of the Federal Rules of Civil Procedure.

iii.   Subject Matter Jurisdiction

Aside from the Winzone Affiliates arguments regarding personal jurisdiction and service of process, the Court appears to lack subject matter jurisdiction over plaintiffs' claims. As noted above, diversity jurisdiction requires an amount in controversy greater than $75,000. See 28 U.S.C. § 1332(a). With regard to the Winzone Affiliates, the complaint does not appear to establish this jurisdictional minimum. In fact, plaintiffs allege only that the Winzone Affiliates caused them contract damages, see Complaint (Doc. #1) ¶ 10 (damages for breach of fiduciary duty measured by $50,000 liquidated damages and $45,000 lost value on the Property), but the complaint does not allege a breach of contract

---

[18](...continued)
in their reply brief on the motion to dismiss. The proper course of action for the nonmoving party to respond to new materials introduced through a reply brief is to seek leave to file a surreply. Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1192 (10th Cir. 2006). Where the nonmoving party fails to file such motion after ample opportunity to do so, the Court may properly consider any new materials offered in the moving party's reply. See id. (month and a half between filing of reply and court decision sufficient opportunity for nonmoving party to seek leave to file surreply). Because plaintiffs have been given ample time to seek leave to respond to this service of process argument, both here and in reply to the motion for entry of default, the Court will consider the argument.

by the Winzone Affiliates. The Court therefore orders plaintiffs to show good cause in writing on or before **December 12, 2007**, why it should not dismiss for lack of subject matter jurisdiction their claims against the Winzone Affiliates.[19]

**IT IS THEREFORE ORDERED** that the Khanal Affiliates' <u>Motion To Dismiss Complaint, Or In The Alternative, For Summary Judgment</u> (Doc. #33) filed April 24, 2007 be and hereby is **SUSTAINED IN PART**. The Court dismisses for lack of subject matter jurisdiction plaintiffs' claims against David Melo, the law firm of David J. Melo, Esq., Shams Uddin and Network Mortgage, Inc. The Court reserves ruling on the remainder of the motion pending plaintiffs' response to its show cause order.

**IT IS FURTHER ORDERED that plaintiffs shall show good cause in writing on or before December 12, 2007, why the Court should not dismiss for lack of subject matter jurisdiction plaintiffs' claims against Tara Khanal, Rosemarie Klie and the law firm of Sweeney, Gallo, Reich & Bolz, LLP.**

**IT IS FURTHER ORDERED** that the NYCB Affiliates' <u>Motion To Dismiss</u> (Doc. #34) filed April 24, 2007 be and hereby is **SUSTAINED**. The Court dismisses for lack of personal jurisdiction plaintiffs' claims against New York Community Bank, James Cantanno and the law firm of Forchelli, Curto, Schwartz, Mineo, Carlino and Cohn, LLP.

**IT IS FURTHER ORDERED** that Option One's <u>Motion To Dismiss With Supporting Memorandum</u> (Doc. #40) filed May 10, 2007 be and hereby is **SUSTAINED**. The Court dismisses for improper venue plaintiffs' claims against Option One Mortgage Corp.

**IT IS FURTHER ORDERED** that the Winzone Affiliates' <u>Motion For The Dismissal Of The</u>

---

[19]       Plaintiffs' response to this show cause order shall be included within the ten page limit which the Court imposed above.

Summons And Complaint Pursuant To F.R.C.P. 4(e)(1), 4(c)(2) and 12(b)(2)(4) (Doc. #45) filed May 14, 2007 be and hereby is **SUSTAINED IN PART**. The Court quashes service on Winzone Realty, Inc. and grants plaintiffs until **14 days after resolution of the orders to show cause set forth in this decision** to properly re-serve Winzone Realty, Inc. under Rule 4 of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED that plaintiffs shall show good cause in writing on or before December 12, 2007, why the Court should not dismiss their claims against Julie Wong and Winzone Realty, Inc. for lack of subject matter jurisdiction.**

**IT IS FURTHER ORDERED that plaintiffs' response to the Court's show cause orders shall not exceed ten pages in length.**

Pending plaintiffs' response to the Court's show cause order, the claims against Khanal, Klie, the law firm of Sweeney, Gallo, Reich & Bolz, LLP, Wong and Winzone Realty, Inc. remain in the case. These claims include breach of contract against Khanal (Count I); bad faith (Count II); breach of fiduciary duty against Wong and Winzone Realty, Inc. (Count III); abuse of process and slander of title against Khanal, Klie and Sweeney, Gallo, Reich & Bolz, LLP (Counts IV through VII); negligence (Count VIII); fraud (Counts IX through XI); conspiracy (Count XII); and tortious interference (Counts XIII and XIV).

Dated this 29th day of November, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge