UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
DAVE SHELDON, *et al.*,

                    Plaintiffs,         **MEMORANDUM AND ORDER**
                                           08-cv-3676(KAM)(LB)

   -against-


TARA KHANAL, *et al.*,

                    Defendants.
-----------------------------------X

**MATSUMOTO, United States District Judge:**

        Plaintiffs Dave Sheldon and Darren Kearns bring suit against defendants Tara Khanal ("Khanal"); David Melo and the law firm of David J. Melo, Esq. (the "Melo defendants"); Shams Uddin, and Network Mortgage, Inc. (the "Uddin defendants"); Rosemarie Klie and the law firm of Sweeney, Gallo, Reich & Bolz, LLP (the "Klie defendants"); New York Community Bank, James Cantanno, and the law firm of Forchelli, Curto, Schwartz, Mineo, Carlino and Cohn, LLP (the "NYCB defendants"); Option One Mortgage Corp. ("Option One"); and Julie Wong and Winzone Realty, Inc. (the "Wong defendants").[1]  Under New York State law, plaintiffs allege that the various defendants committed breach

---

[1]     On August 1, 2007, the Clerk of the Court in the District of Kansas entered default against defendant Abu Athar. (Doc. No. 66.)  Upon the plaintiffs' filing of their Amended Complaint on February 27, 2008, the Clerk's August 1, 2007 Entry of Default as to defendant Athar was mooted.  See, e.g., Rock v. Am. Express Related Servs., Co., 1:08-cv-0853 (GTS/RFT), 2008 U.S. Dist. LEXIS 101909, at *5-6, n.3 (N.D.N.Y. Dec. 17, 2008).

of contract (Count I); bad faith (Count II); breach of fiduciary duty (Count III); negligent and intentional abuse of process (Counts IV and V); negligent and intentional slander of title (Counts VI and VII); common law negligence (Count VIII); negligent misrepresentation (Count IX); fraud by misrepresentation (Count X); fraud by silence (Count XI); common law conspiracy (Count XII); and tortious interference with business relationships and economic prospects (Counts XIII and XIV).

Pending before the court are the following motions. 1) The Melo defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and, in the alternative, 56(c). 2) The Uddin defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). 3) Option One's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). 4) The Wong defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). 5) The Klie defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). 6) The NYCB defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[2]

For the following reasons, plaintiffs' claims against all defendants are dimissed.

---

[2] The court collectively refers to the defendants who have filed motions to dismiss that are the subject of the Memorandum and Order as "defendants." Neither Khanal nor Athar has filed a motion to dismiss.

## BACKGROUND

### I.    Procedural History

Plaintiff filed the pending action in the District of Kansas on March 14, 2007.  In April 2007, defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(1)-(3), and (5)-(6).  Judge Kathryn H. Vratil dismissed all claims against the Melo defendants and the Uddin defendants for lack of subject matter jurisdiction.  She ordered plaintiffs to show good cause why the court should not dismiss for lack of subject matter jurisdiction plaintiffs' claims against Khanal and the Klie defendants.  Additionally, Judge Vratil dismissed for lack of personal jurisdiction claims against the NYCB defendants.  The court dismissed claims against Option One for improper venue. Judge Vratil further ordered that plaintiffs show good cause why the claims against the Wong defendants should not be dismissed for lack of subject matter jurisdiction.  (J. Vratil Mem & Order Doc. No. 78 ("Doc. No. 78").)  As clearly stated in Judge Vratil's November 29, 2007 Memorandum and Order, the defendants who remained in the case at that time were Khanal, the Klie defendants, and the Wong defendants.  (Doc. No. 78 at 40.)

Plaintiffs filed their response to the court's orders to show cause on December 12, 2007.  Included in plaintiffs' response was a motion for reconsideration and a motion for leave

to amend their complaint. (Doc. No. 81.) Judge Vratil denied
plaintiffs' motion for reconsideration. The NYCB defendants and
Option One, dismissed pursuant to the November 29, 2007 Order,
filed memoranda in opposition to plaintiffs' motion for leave to
amend. The Melo defendants and the Uddin defendants did not
file any opposition. The court granted the plaintiffs leave to
amend the compliant to cure the defects the court identified in
its November 29, 2007 Memorandum and Order and denied for
mootness the Khanal defendants' motion to dismiss filed in April
2007. An amended complaint was filed on February 27, 2008 that
includes all of the originally-named defendants.

After the amended complaint was filed, the parties
again filed motions to dismiss. Before the motions to dismiss
were decided, the case was transferred to this district on
September 30, 2008. At an October 10, 2008 settlement
conference before Judge Bloom, the court set a briefing schedule
for the defendants' motions to dismiss. On December 15, 2008,
the Melo defendants, Uddin defendants, and Wong defendants filed
motions to dismiss. (Doc. Nos. 201, 204, 205.) The Klie
defendants filed their motion to dismiss on February 19, 2009.
(Doc. No. 221.) The NYCB defendants and defendant Option One

filed their motions to dismiss on February 20, 2009.  (Doc. Nos. 231, 237.)[3]

Upon the request of defendant Option One, the court held oral argument on defendant Option One's motion to dismiss on September 9, 2009.

## II.  Allegations in the Complaint

In her Memorandum and Order and Order to Show Cause, Judge Vratil summarized the allegations in the first complaint. Although the court notes that the allegations in the first and amended complaints are substantially the same, the court summarizes the amended complaint as follows.  Because, as Judge Vratil observed, the plaintiffs' complaint is rambling, poorly-organized and often incomplete, for purposes of clarity, the court's summary of the amended complaint is supplemented with additional evidence in the record as noted.  The court, however, does not rely on any evidence or facts outside of the complaint, or documents referred to therein, for purposes other than clarity in summarizing the background of this case.

This case involves two discrete disputes concerning the property located at 148-18 Laburnum Avenue, Flushing, New York (the "property").  The first dispute arises from

---

[3]     The court notes that the NYCB defendants additionally filed a motion for sanctions on February 20, 2009.  The motion for sanctions is addressed by the court in a separate Memorandum and Order.

plaintiffs' purchase of the property in February 2006 and involves the NYCB defendants.  The second dispute involves the remaining defendants.

### A. Plaintiffs' Allegations against the NYCB Defendants

On February 15, 2006, plaintiffs purchased the property at a sheriff's sale.  As set forth in Judge Vratil's Memorandum and Order and Order to Show Cause, NYCB was a mortgagee of the property.  (Doc. No. 78 at 5 n.3.)  The sheriff subsequently distributed the proceeds of the sale to creditors who had interests in the property, including NYCB.  (Id. at 6.) On February 16, 2006, Cantanno, through his law firm Forchelli, Curto, Schwartz, Mineo, Carlino, and Cohn, LLP, contacted plaintiff Sheldon and informed him that he needed to pay additional amounts in interest and fees in addition to the principal balance.  (Compl. ¶ 49.)  The complaint indicates that for several months the NYCB defendants and Sheldon disputed whether Sheldon owed additional money to NYCB.  Ultimately, on October 1, 2006, NYCB, through Cantanno and his law firm, filed suit against the plaintiffs and the original creditor in New York state court requesting a second judicial sale of the property to recover mortgage interest and fees which it had not received from the first judicial sale in February 2006.  (Compl. ¶ 52.)

On March 14, 2007, plaintiffs filed the present action against the NYCB defendants alleging causes of action arising from the state court action filed by the NYCB defendants in October 2006. Namely, plaintiffs allege that the NYCB defendants negligently and intentionally abused the legal process by filing the New York suit and negligently and intentionally slandered the title to the property. (Doc. No. 78 at 6.) In a September 23, 2008 Judgment and Order by Judge Marguerite Grays of the New York State Supreme Court, judgment in favor of the NYCB was granted. Judge Grays ordered that the "Satisfaction of Mortgage," filed against the property on July 20, 2006, be vacated and NYCB was granted leave to foreclose on its mortgage lien. (Urschal Aff. Ex. O.)

### B. Plaintiffs' Allegations against the Remaining Defendants

Plaintiffs Dave Sheldon and Darren Kearns were the owners of real property located at 148-18 Laburnum Avenue, Flushing, NY. (Compl. ¶ 21.) On August 18, 2006, plaintiffs entered into a listing agreement with the Wong defendants for the sale of the property. (Id.) On approximately August 30, 2006, plaintiffs terminated the listing agreement. (Id.) On approximately September 3, 2006, defendant Wong presented defendant Khanal to plaintiffs as a potential buyer for the property. (Id.) Khanal signed a preliminary offer to purchase

the property for $675,000. (Doc. No. 78 at 16. ) Plaintiffs accepted Khanal's offer (Compl. at 23.) Wong advised plaintiffs that the buyer was pre-qualified for the purchase and that the closing would transpire within 30-45 days. (Compl. at ¶ 22.) Wong did not mention to plaintiffs that Khanal had any credit problems, or that she was married. (Id.) Plaintiffs allege that Wong advised plaintiffs on several occasions between September 3, 2006 and November 8, 2006 that Khanal had a loan commitment from Network Mortgage, Inc. (Id. at ¶ 23.)

Between September 4 and 14, 2006, plaintiffs and Khanal, through her attorney, the Melo defendants, negotiated a sale contract of sale. (Compl. at ¶ 26; Doc. No. 201, Ex. 1, Melo Def. 56.1 Stmt. ¶ 1). On September 13, 2006, Khanal obtained a loan commitment from the Uddin defendants and "wrote her down payment check". (Compl. ¶ 24.) The contract was executed by the plaintiffs in Kansas on September 14, 2006. (Compl. ¶ 26.) The contract contained a "Mortgage Commitment Contingency" clause which provided that Khanal's obligation to purchase the property was contingent on her ability to secure a commitment for $525,000 from an institutional lender within 30 days. (Doc. No. 224, Ex. 1, Contract ¶ 8)

On September 14, 2006, the Wong defendants and Khanal placed a "SOLD" sign in the property's yard. (Compl. ¶ 24.) On September 15, 2006, plaintiffs told Khanal and the Wong

defendants to take the "SOLD" sign off of the property's yard because they "wanted to be cautious." (Id. at ¶ 24.) Wong and Khanal told plaintiffs that Khanal had a loan commitment, but that she was working on getting a loan with a better interest rate and that there was no need for back-up showings. (Id.) On September 22, 2006, Melo and Khanal ordered a title policy for the property. (Compl. ¶ 28.) On October 4, 2006, Melo and Khanal advised plaintiffs that the parties' contract had been sent to a second lender. (Compl. ¶ 29.) Plaintiffs understood this to mean that Khanal was seeking a better interest rate than the previous commitment. (Compl. ¶ 29.) On October 10, 2006, the Wong defendants advised plaintiffs that Khanal had a loan commitment and that Khanal was planning to close on October 20, 2006. (Id. at ¶ 31.)

On October 18, 2006, Melo told plaintiff Kearns that Khanal did not have a loan commitment and plaintiffs granted an extension of the closing date. (Id. at ¶ 33.) On November 2, 2006, Melo advised plaintiffs that Network Mortgage, Inc., and its broker Shams Uddin, wanted Khanal to buy the property in her cousin's name and transfer the deed back to her after closing. (Compl. ¶ 34.) On November 7, 2006, Uddin, through Network Mortgage, Inc., advised plaintiffs that Khanal's husband had three accounts in collection, that Khanal had a loan commitment, that Khanal refused to accept a co-signer to obtain a second

loan commitment at a lower interest rate, and that Sheldon could co-sign a second mortgage at a lower rate with no problem. (Compl. ¶ 38.) Because of Khanal's husband's poor credit, Khanal needed five percent of the purchase price in a second mortgage or a co-signor. (Compl. ¶ 39.) Sheldon agreed to co-sign the loan, but Khanal refused. (Compl. ¶ 39.) On November 7, 2006, Melo told plaintiffs that he was canceling the real estate contract with Khanal because she could not qualify for a loan. (Id. at ¶ 36.) After Melo so informed the plaintiffs, the plaintiffs requested liquidated damages and advised the escrow agents that they objected to the release of any escrow funds to Khanal. (Compl. ¶ 40.)

On November 7, 2006, Khanal asked Option One "to verify her inability to obtain a loan." (Id. at ¶ 34.) Plaintiffs allege that Option One provided Khanal with a denial. (Id. at ¶ 9.)

On February 1, 2007, Khanal filed suit in New York State court seeking return of the $50,000 escrow deposit. (Id. at ¶ 46.) The court ordered plaintiffs to return the escrow deposit to Khanal. Plaintiffs sold the property to a third party on February 16, 2007 for $630,000. (Doc. No. 78 at 20.) By an order dated April 11, 2007, the New York State court granted summary judgment in favor of Khanal, finding that she was unable to obtain a loan commitment, directed plaintiffs to

the return the $50,000 down payment.  (Doc. No. 204, Ex. 2,
Hacker Aff., Ex. C.)

## DISCUSSION

### III. Motion to Dismiss Pursuant to Rule 12(b)(1)

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of
a complaint when the federal court "lacks jurisdiction over the
subject matter."  Federal subject matter jurisdiction exists
only when a "federal question" is presented under 28 U.S.C.
§ 1331, or, as provided in 28 U.S.C. § 1332, where the
plaintiffs and all the defendants are of diverse citizenship and
the amount in controversy exceeds $75,000.  See Da Silva v.
Kinsho Int'l Corp., 229 F.3d 358, 363 (2d Cir. 2000).  If the
exercise of that jurisdiction would result in the reversal or
modification of a state court judgment, federal district courts
lack subject matter jurisdiction, even if there is a predicate
for the exercise of federal jurisdiction.  Davis v. City of New
York, No. 00 Civ. 4309 (SAS), 2000 WL 1877045, at *3 (S.D.N.Y.
Dec. 27, 2000) (citing Rooker v. Fidelity Trust Co., 263 U.S.
413, 416, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923)).  Where
jurisdiction is lacking, the district court must dismiss the
complaint without regard to its merits.  Nowak v. Ironworkers
Local 6 Pension Fund, 81 F.3d 1182, 1188 (2d Cir. 1996).

As the party "seeking to invoke the subject matter jurisdiction of the district court," Scelsa v. City Univ. of New York, 76 F.3d 37, 40 (2d Cir. 1996), the plaintiff must demonstrate by a preponderance of the evidence that there is subject matter jurisdiction. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), federal courts "need not accept as true contested jurisdictional allegations." Jarvis v. Cardillo, No. 98 Civ. 5793 (RWS), 1999 U.S. Dist. LEXIS 4310, at *7 (S.D.N.Y. Apr. 6, 1999). Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings, such as affidavits. See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998). Although "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," Guadagno v. Wallack Ader Levithan Assocs., 932 F. Supp. 94, 95 (S.D.N.Y. 1996), a court should "'constru[e] all ambiguities and draw[] all inferences' in a plaintiff's favor." Aurecchione, 426 F.3d at 638 (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

Here, plaintiffs allege jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1367. Under 28 U.S.C. § 1332(a), federal

district courts have original jurisdiction over all civil actions where there is diversity of citizenship between the parties and "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a)(1). Plaintiffs allege, and defendants do not contest, that there is diversity of citizenship because all defendants are citizens of New York and both plaintiffs are citizens of Kansas.

The Melo defendants bring their motion to dismiss plaintiffs' contract claim in part pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, alleging that the plaintiffs have not met the amount in controversy requirement in 28 U.S.C. § 1332(a). The Melo defendants argue that plaintiffs' breach of contract claim does not exceed the statutory amount of $75,000. (Doc. No. 203, Melo Mem. at 12.)

The Klie defendants and the NYCB defendants bring their motion to dismiss in part pursuant to Fed. R. Civ. P. 12(b)(1), alleging that the Rooker-Feldman doctrine bars the action as it is inextricably intertwined with a state court judgment, and unreviewable by the district court. (Doc. No. 223, Klie Mem. at 30; Doc. No. 231, NYCB Mem. at 7.)[4]

_____

[4]    The Klie defendants and NYCB defendants have also brought motions pursuant to Rule 12(b)(1) on the basis that the plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel. Motions to dismiss on these bases are

## A. The Amount in Controversy Requirement and the Melo Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)

For the purposes of determining the amount in controversy, the amount which plaintiffs allege in the complaint controls if the claim is apparently made in good faith.  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938).  A plaintiff must establish "to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount.  Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994).  While the Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy,"  Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999), a court must dismiss the case for want of subject matter jurisdiction if, "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or . . . that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction."  Tongkook, 14 F.3d at 784 (citing St. Paul, 303 U.S. at 289 (1938)).

---

decided pursuant to Fed. R. Civ. P. 12(b)(6) and are therefore discussed below.

In their Amended Complaint, the plaintiffs do not set forth any facts regarding the breach of contract claim that are materially different from those in the original complaint. In response to Judge Vratil's November 29, 2007 Memorandum & Order, the plaintiffs submitted sworn statements as part of their complaint in which plaintiff Kearns swore that attorneys' fees would be in excess of $25,000. While the addition of $25,000 to plaintiffs' claimed damages may exceed the statutory amount in controversy requirement for diversity jurisdiction, "[attorneys'] fees may not properly be included in determining the jurisdictional amount unless they are recoverable as a matter of right" pursuant to a statute or contract. Givens v. W.T. Grant Co., 57 F.2d 612, 614 (2d Cir. 1972). Under New York law, attorneys' fees are not recoverable in actions for breach of contract, absent a contractual provision stating otherwise. United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74-75 (2d Cir. 2004). Therefore, defendants must be contractually obligated to pay attorneys' fees in order for the plaintiffs to be entitled to them as a matter of right.

The Melo defendants argue that the plaintiffs have not met the amount in controversy requirement. Plaintiffs do not allege that the Melo defendants are parties to a contract that provides for attorneys' fees. Therefore, the court declines to include attorneys' fees in its calculation of the amount in

15

controversy for the breach of contract claim against the Melo defendants.  Cf. Rescuecom Corp. v. Chumley, 07-CV-0690 (FJS/GHL), 2007 U.S. Dist. LEXIS 85111, at *17-21 (S.D.N.Y. Nov. 2, 2007) (finding that the plaintiff sufficiently alleged that the agreement mandated attorneys' fees and provided a definite measure of fees so as to allow the calculation of attorneys' fees as a part of the amount in controversy).  The $50,000 in damages alleged by plaintiffs falls far short of the amount in controversy requirement.  Therefore, the plaintiffs' breach of contract claim against the Melo defendants is dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### B. The Rooker/Feldman Doctrine (Klie Defendants and NYCB Defendants)

The Klie defendants and the NYCB defendants argue that plaintiffs' claims should be dismissed under Rule 12(b)(1) pursuant to the Rooker/Feldman doctrine.  The Rooker/Feldman doctrine bars those claims that were adjudicated in a prior state court action, as well as those "inextricably intertwined" with the state court judgment.  District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 75 (1983); Rooker, 263 U.S. at 414-15; Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005).  Claims are "inextricably intertwined" when a plaintiff had an opportunity to raise a claim in an earlier proceeding, but failed to do so.  For the Rooker/Feldman

doctrine to apply, the following four requirements must be met: "First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff must 'complain[] of injuries caused by [a] state-court judgment[.]' Third, the plaintiff must 'invite district court review and rejection of [that] judgment[].'  Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced' – *i.e.*, *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." Hoblock, 422 F.3d at 85.

Here, the plaintiffs commenced the federal court action in March 2007, while the state court proceedings were pending and before there was a judgment on either the NYCB defendants' action or Khanal's action against the plaintiffs. See Exxon Mobil Corp. v. Saudi Basic Ind. Corp., 544 U.S. 280, 290-293 (2005) (reversing the Third Circuit's application of the Rooker/Feldman doctrine when the federal action was commenced shortly after the state court action and, by the time motions to dismiss were filed in the federal action, the state court action had concluded).  Therefore, the Rooker/Feldman doctrine is inapplicable and the Klie defendants' and NYCB defendants' motions to dismiss pursuant to the Rooker/Feldman doctrine are denied.

## IV.  Motions to Dismiss Pursuant to Rule 12(b)(6)

All defendants argue that the claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Fed. R. Civ. P. 12(b)(6) provides for dismissal of a complaint when the allegations contained therein fail "to state a claim upon which relief can be granted."  A federal court sitting in diversity applies the substantive law of the state in which it sits, including choice of law rules.  Comer v. Titan Tool, Inc., 888 F. Supp. 605, 608 (S.D.N.Y. 1995).  Under New York's "interest analysis" the law of the jurisdiction having the most interest in the litigation will be applied.  Schultz v. Boy Scouts of America, 491 N.Y.S.2d 90, 95 (1985).  As Judge Vratil has already decided, "this controversy has no substantial connection to the State of Kansas . . . .  The State of Kansas has no discernable interest in resolving the dispute with regard to Kearns, a Missouri resident who happens to have an office in Kansas."  (Doc. No. 78 at 14-15.)  On the contrary, these allegations arose in New York in regard to property located in New York and all defendants are New York residents.  Therefore, the court applies New York law when analyzing whether the plaintiffs have stated a claim.

On a Rule 12(b)(6) motion, the court's consideration is normally limited to facts alleged in the complaint, "documents appended to the complaint or incorporated in the

complaint by reference, and to matters of which judicial notice
may be taken." See Allen v. WestPoint-Pepperell, Inc., 945 F.2d
40, 44 (2d Cir. 1991); see also Drance v. Citigroup, No. 05 Civ.
0001 (RCC)(KNF), 2006 U.S. Dist. LEXIS 85169, at *8 (S.D.N.Y.
2006) (stating "when a motion to dismiss is premised on the
doctrine of collateral estoppel, a court is permitted to take
judicial notice of and consider the complaints and the record
generated in both actions without having to convert the motion
to dismiss into a summary judgment motion").[5] All factual
allegations in the complaint are viewed in favor of the non-
moving party. See Krimstock v. Kelly, 306 F.3d 40, 47-48 (2d
Cir. 2002).

All defendants argue that plaintiffs fail to state a
claim. Additionally, the Klie defendants, Melo defendants,
Uddin defendants and NYCB defendants argue that plaintiffs'
claims are barred by the doctrines of *res judicata* and
collateral estoppel.

---

[5]     The following documents, not annexed to the complaint, fall
within these categories: (1) the listing agreement contract
(Doc. No 207, Ex. 1, Zou Aff. Ex. A), (2) the contract for sale
agreement, (3) the New York state court decision, dated June 8,
2008 ("NYCB state court judgment") (NYCB Mem. Ex. N), and (4)
the New York state court decision, dated September 25, 2007 and
modified by the appellate division on October 14, 2008,
reversing the trial court's upholding of the notice of
cancellation and the award of attorney's fees, and a transcript
of state court proceedings from November 21, 2007 ("Klie state
court judgment") (Klie Mem. Exs. E-G). As a result, the court
considers them in deciding the pending motions without
converting the motions into motions for summary judgment

## A. Rule 12(b)(6) Failure to State a Claim

Pursuant to Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 (2007)).  Although Rule 8 does not require detailed allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at  1949.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."  Id. (quoting Fed. R. Civ. P. 8).  The court analyzes the parties' motions to dismiss for failure to state a claim in light of this standard.  At the outset, although defendant Abu Athar has not filed a motion to dismiss, the court dismisses all of plaintiffs' claims against defendant Athar for failure to state a claim as plaintiffs have not alleged any facts whatsoever regarding defendant Athar.  See, e.g., Estelle v. Gamble, 429 U.S. 97, 98 (1976) (reversing in part the Court of

Appeals's reversal of the district court's <u>sua</u> <u>sponte</u> dismissal of plaintiff's complaint for failure to state a claim); <u>see</u> <u>also</u>, <u>Humphreys v. Nager</u>, 962 F. Supp. 347, 351 (E.D.N.Y. 1997) (where complaint names a defendant in the caption, but contains no allegation of how defendant violated the law or injured plaintiff, the court can <u>sua</u> <u>sponte</u> dismiss plaintiff's complaint).

### 1. Breach of Contract

Plaintiffs allege that the Melo defendants, Wong defendants, Uddin defendants, Klie defendants, and Option One breached a contract for sale and the listing agreement contract. Plaintiffs' claim against the Melo defendants has already been dismissed for lack of subject-matter jurisdiction, thus, the court does not address the Melo defendants' Rule 12(b)(6) motion for this claim.

To state a valid cause of action based on breach of contract under New York law, the complaint must specify 1) the formation of a contract between the plaintiff and defendant, 2) performance by the plaintiff, 3) failure by the defendant to perform, and 4) resulting damages. <u>Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168, 177 (2d Cir. 2004) (citing <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 348 (2d Cir. 1996)); <u>Furia v. Furia</u>, 116 A.D.2d 694, 695 (2d Dep't 1986).

Plaintiffs have failed to allege that there was a formation of a contract with any of the defendants with the exception of the Wong defendants and Khanal, who is not a party to the motions pending before the court. Therefore, plaintiffs' breach of contract claim is dismissed as to the Uddin defendants, Klie defendants, and Option One.

The Wong defendants were parties to a listing agreement contract with plaintiffs entered on August 18, 2006, and terminated by plaintiffs on August 30, 2006. (Compl. ¶ 21; Zou Aff. Ex. A.) Plaintiffs allege that the contract was breached because the Wong defendants "fail[ed] to provide pre-qualification buyer information as promised." (Comp. ¶ 43.) However, the listing agreement contract, terminated by plaintiffs before the Wong defendants presented Khanal as a potential buyer, does not impose this duty on the Wong defendants, and plaintiffs have not alleged that any terms of the listing agreement contract, or any other agreement reached by these parties, impose such an obligation. Therefore, any failure by the Wong defendants to provide pre-qualification buyer information is not a breach of the contract, even if plaintiffs had not previously terminated the contract. The only allegation suggesting that the Wong defendants may have had such a duty, if the agreement had not been terminated by plaintiffs, is a statement on the Wizone defendant's website that "pre-

qualification services are provided."  However, even if the Wong
defendants were obligated to provide pre-qualification services,
there are no allegations that pre-qualification services were
required by the contract and not provided.  Indeed, the
allegations specifically state that the plaintiffs were advised
that the "buyer was pre-qualified for the purchase from the
[Wong defendants' due diligence procedures."  (Compl. ¶ 22.)
Therefore, plaintiffs' breach of contract claims against all
defendants are hereby dismissed.

### 2. Bad Faith

Plaintiffs allege that defendants committed bad faith
because they "committed fraudulent, unconscionable and tortious
acts."  (Compl. ¶ 106.)  In New York, there is no independent
cause of action for bad faith.  <u>Tedorachvili v. Chase Manhattan
Bank</u>, 103 F. Supp.2d 632, 642 (E.D.N.Y. 2000).  Therefore,
plaintiffs' cause of action for bad faith against all defendants
and Khanal is dismissed.

### 3. Breach of Fiduciary Duty

Plaintiffs allege breach of fiduciary duty against the
Melo defendants, Wong defendants, Klie defendants, Uddin
defendants, and Option One based on these defendants' alleged
failure to provide material accurate information regarding
defendant Khanal's qualifications.

To state a cause of action for breach of fiduciary duty, "plaintiff must allege three elements: (1) the existence of fiduciary relationship; (2) knowing breach of a duty that relationship imposes; and (3) damages suffered." Carruthers v. Flaum, 388 F. Supp. 2d 360, 381 (S.D.N.Y. 2005). A fiduciary relationship may be found "when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir. 1991) (quoting Mandelblatt v. Devon Stores, Inc., 521 N.Y.S.2d 672, 676 (1st Dep't 1987)). Generally, New York courts "focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first." Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc., 767 F. Supp. 1220, 1231 (S.D.N.Y. 1991). "Mere reposal of one's trust or confidence in a party, however, does not automatically create a fiduciary relationship; the trust or confidence must be accepted as well." Thermal Imaging, Inc. v. Sandgrain Sec., Inc., 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001).

Here, there is nothing in the complaint to suggest a fiduciary relationship between the plaintiffs and any of the Melo defendants, Uddin defendants, Klie defendants, Option One, or Khanal. Indeed, the Melo defendants and the Klie defendants represented co-defendant Khanal in the contract of sale

24

negotiations and Khanal's state court action, respectively. It is unclear from the complaint what, if any, relationship the Uddin defendants had with plaintiffs. Furthermore, Option One denied Khanal's loan application. This fact does not establish a fiduciary relationship between Option One and plaintiffs. Therefore, plaintiffs' breach of fiduciary duty claims against the Melo defendants, Uddin defendants, Klie defendants, Option One and Khanal are dismissed.

Plaintiffs have not set forth sufficient facts from which to infer that the Wong defendants had a fiduciary relationship with the plaintiffs by virtue of the plaintiffs terminating the listing agreement contract before the subsequent presentation to the paintiffs by the Wong defendants of co-defendant Khanal as a potential buyer. Notwithstanding the termination of the listing agreement by plaintiffs, plaintiffs allege that the Wong defendants breached their fiduciary duty by failing to disclose and misrepresenting Khanal's financial eligibility, and causing plaintiffs lost profit damages from the sale of the property. Even if there were sufficient facts from which to infer a fiduciary breach, plaintiffs have not alleged any facts – but, rather, simply set forth conclusory allegations – as to how the Wong defendants' alleged fiduciary breach caused them lost profits. Plaintiffs have not alleged that other prospective buyers were interested in the property as a result

of the breach.  Therefore, plaintiffs' claims for breach of
fiduciary duty are dismissed.

### 4. Abuse of Process: Negligent and Intentional

Plaintiffs allege that all defendants are liable for
abuse of process.  According to the Amended Complaint, the Wong
defendants, Uddin defendants, Melo defendants, Klie defendants,
Khanal and Option One allegedly abused process by filing the
Khanal state court action and Notice of Pendency in February
2007.  The NYCB defendants allegedly abused process by filing
their civil complaint and Notice of Pendency on October 1, 2006.

A plaintiff must show three elements for an abuse of
process claim: "(1) regularly issued process, either civil or
criminal, (2) an intent to do harm without excuse or
justification, and (3) use of the process in a perverted manner
to obtain a collateral objective." Curiano v. Suozzi, 63 N.Y.2d
113, 116 (1984).  The New York Court of Appeals defines process
as "a 'direction or demand that the person to whom it is
directed shall perform or refrain from the doing of some
prescribed act.'" Williams v. Williams, 23 N.Y.2d 592, 596,
(1969) (citation omitted).  In other words, for a successfully
pleaded cause of action, "there must be an unlawful interference
with one's person or property under the color of process." Id.
Abuse of process has been described as a "form of extortion"

where "the defendant invokes legal process to coerce the plaintiff into doing something other than what the process contemplates." Vista Food Exchange, Inc. v. Joyce Foods, Inc., No. 96 Civ. 0012 (MBM), 1996 U.S. Dist. LEXIS 3252, at *14 (S.D.N.Y. Mar. 20, 1996). A cause of action exists only if the defendant wrongfully used process for an "intended and accomplished result [that] exceeds the scope of the provisional remedy." Id. The "'gist of the action for abuse of process'", is "'the improper use of process after it is issued.'" Curiano, 63 N.Y.2d at 117 (quoting Williams, 23 N.Y.2d at 596); Dean v. Kochendorfer, 237 N.Y. 384, 390 (1924); Miller v. Stern, 27 N.Y.S.2d 374, 378 (1st Dep't 1941)).

Plaintiffs have not alleged that the following defendants used any process: the Uddin defendants, Melo defendants, Wong defendants, and Option One. Therefore, plaintiffs' claims for abuse of process are dismissed as to those defendants, leaving the remaining defendants the NYCB defendants and the Klie defendants and Khanal. The NYCB defendants and Khanal filed separate lawsuits and separate Notices of Pendency, in October 2006 and February 2007, respectively (the "NYCB action" and the "Khanal action").

In the NYCB action, the NYCB, through its attorney, defendant Cantanno and his law firm, Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP, filed a complaint in state court on

October 6, 2006 to foreclose the mortgage on the property and cancel and discharge a document denominated as a "satisfaction of mortgage" accepted for recording by the City Register. (NYCB Mem. Ex. N at 2.) The NYCB sought to collect the remaining debt owed on the property, plus interest and late fees. (Id.) The state court ultimately found in favor of the NYCB. In conjunction with this lawsuit, the NYCB filed a Notice of Pendency.

In the Khanal action, Khanal, through her attorneys, the Klie defendants, filed a lawsuit to recover the down payment paid to plaintiffs pursuant to the contract of sale. In conjunction with the lawsuit, Khanal filed a Notice of Pendency. The New York Supreme Court ruled in favor of Khanal, finding that Khanal was unable to obtain a mortgage and was, thus, entitled to the return of her $50,000 down payment. (Klie Ex. F.) In an order dated October 23, 2008, the Appellate Division modified the Supreme Court's Order by reducing the amount of judgment to be entered against the plaintiffs from $86,456.74 to $50,000. Additionally, the court cancelled the Notice of Pendency.

The "mere 'institution of a civil action by summons and complaint is not legally considered process capable of being abused.'" N.Y. Stock Exch., Inc. v. Gahary, 196 F. Supp. 2d 401, 415 (S.D.N.Y. 2002). Furthermore, pursuant to N.Y.

C.P.L.R. § 6501, "a notice of pendency may be filed in any action . . . in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property. . . ." Nevertheless, to the extent that the institution of the NYCB action and the Khanal action, and the Notices of Pendency filed in conjunction therewith, can be considered "abuse of process," plaintiffs fail to allege how process was abused <u>after</u> it was issued. <u>See Curiano</u>, 63 N.Y.2d at 117. Plaintiffs have not alleged facts suggesting that the result of these processes "exceed[ed] the scope of the provisional remedy." <u>Vista Food</u>, 1996 U.S. Dist. LEXIS 3252 at *14. It follows that plaintiffs have not stated a claim for abuse of process against the Klie defendants and Khanal or the NYCB defendants. Plaintiffs' claims for abuse of process against all defendants are dismissed.

### 5. Slander of Title: Negligent and Intentional

Plaintiffs allege slander of title against all defendants. The elements of a slander of title cause of action are "'(1) a communication falsely casting doubt on the validity of complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in special damages.'" <u>Coffaro v. Crespo</u>, No. 08-CV-2025 (DGT), 2009 U.S. Dist. Lexis 44801, at *10 (E.D.N.Y. May 28, 2009) (quoting <u>Brown v. Bethlehem Terrace Assocs.</u>, 525

N.Y.S.2d 978, 979 (3d Dep't 1998)). For plaintiffs to meet the first element of a claim for slander of title, plaintiffs must allege facts that the defendants communicated "that plaintiff is not the true owner" of the property. <u>Coffaro</u>, 2009 U.S. Dist. LEXIS 44801 at *11; <u>Lindsay Jenkins v. Bruce Eaton</u>, No. 08-CV-0713 (NGG), 2009 U.S. Dist. Lexis 26308, at *16 (E.D.N.Y. Mar. 26, 2009). The plaintiffs have failed to allege any false assertions casting doubt on plaintiffs' ownership of any property by any of the Melo defendants, Uddin defendants or Option One. Therefore, plaintiffs' slander of title claims against these defendants are dismissed.

The only "communications" allegedly made regarding plaintiffs' ownership of the property by the NYCB defendants and Klie defendants and Khanal are the *lis pendens* filed in New York state court. A *lis pendens*, however, "contains statements that are undeniably true, as they note only that [] an action for specific performance has been commenced." <u>Ramirez v. Platt</u>, No. CV 87-4128, 1988 U.S. Dist. Lexis 13315, at *9 (E.D.N.Y. Nov. 23, 1988); <u>see Brown v. Bethlehem Terrace Associates et al.</u>, 525 N.Y.S.2d 978, 979-980 (3d Dep't 1988) (holding that a *lis pendens* does not satisfy the first element of a slander of title claim because a *lis pendens* is "an undeniably true statement . . . [that] declares that: an action has been commenced and is now pending in this court upon the complaint of the above-named

plaintiff against the above-named defendants for the purpose of
obtaining a judgment of specific performance, directing the
defendants to convey certain real property . . . to the
plaintiff.") (citation and internal quotation marks omitted).
The *lis pendens* do not falsely cast doubt on the validity of
plaintiffs' title to the property.  Therefore, plaintiffs have
not alleged facts supporting the first element of a slander of
title claim against the Klie defendants and Khanal or the NYCB
defendants.  Thus, the claim must be dismissed as to the Klie
defendants, Khanal, and NYCB defendants.

With regard to the Wong defendants, plaintiffs appear
to argue that the Wong defendants' posting of the "SOLD" sign on
the property and statements on an electronic listserv that the
property was sold satisfy the first element of a claim for
slander of title.  Even assuming that these communications would
satisfy the first element of a slander of title claim, which
they do not, the plaintiffs again have failed to state a cause
of action against the Wong defendants because they have not
satisfied the second element of their slander of title claim by
alleging facts from which to infer that the Wong defendants
acted with malice and that their actions were "reasonably
calculated to cause harm."  "Where malice is an element of a
claim [s]ome facts must be asserted to support the claim that
the state of mind existed."  <u>Chamilia, LLC v. Pandora Jewelry,</u>

<u>LLC</u>, 04-cv-6017 (KMK), 2007 U.S. Dist. LEXIS 71246, at *34

(S.D.N.Y. Sept. 24, 2007) (citation and internal quotation marks

omitted).  In New York, plaintiff must allege "actual malice,"

*i.e.*, that the "defendant acted with knowledge that the

statements were false or with "reckless disregard" for the truth

or falsity of the statements."  <u>Id.</u> at *35.  Here, plaintiffs

have not alleged malice and their mere suspicion that the Wong

defendants had ulterior motives is insufficient to state a

claim.  <u>See Id.</u> at *36.  Therefore, plaintiffs' slander of title

claim against the Wong defendants is dismissed.

### 6. Negligence

Plaintiffs allege negligence on the part of all

defendants.  Under New York law, the elements of a negligence

claim are: "(1) a duty owed to the plaintiff by the defendant;

(2) breach of that duty; and (3) injury substantially caused by

that breach."  <u>Fagan v. First Sec. Invs., Inc.</u>, No. 04 Civ. 1021

(LTS)(THK), 2006 U.S. Dist. LEXIS 66065, at *17 (S.D.N.Y. 2006)

(citing <u>Merino v. New York City Transit Auth.</u>, 639 N.Y.S.2d 784,

787 (1st Dep't 1996)).

As previously discussed, plaintiffs have not alleged

sufficient facts indicating that any of the defendants owed a

duty to plaintiffs.  As a result, for the reasons set forth in

the court's discussion of plaintiffs' claim for a breach of

fiduciary duty, the Melo defendants', Uddin defendants', Klie defendants', NYCB defendants', and Option One's motions to dismiss plaintiffs' negligence claims are granted. The plaintiffs' claim for negligence again Khanal is likewise dismissed. To the extent that the plaintiffs have alleged facts from which to infer that the Wong defendants' had a duty to the plaintiffs, even after plaintiffs terminated the listing agreement, plaintiffs have failed to state, beyond mere conclusory allegations, facts from which to infer that they suffered injury that was substantially caused by any breach. Therefore, the Wong defendants' motion to dismiss plaintiffs' negligence claim is also granted.

### 7. Negligent Misrepresentation

"Under New York law, a negligent misrepresentation claim must satisfy the following elements: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Lewis v. Rosenfield, 138 F. Supp. 2d 466, 479-480

(S.D.N.Y. 2001). With regard to the first element, "a party can assert a negligent misrepresentation claim against a professional only where there is either actual contractual privity or a relationship 'so close as to approach that of privity.'" Id. at 480 (quoting Ultramares Corp. v. Touche, 255 N.Y. 170, 182-83 (1931)); see also Kimmell v. Schaefer, 89 N.Y.2d 257, 263 (1996) (stating "[s]ince a vast majority of commercial transactions are comprised of such "casual" statements and contacts, we have recognized that not all representations made by a seller of goods or provider of services will give rise to a duty to speak with care").

Here, plaintiffs assert negligent misrepresentation claims against attorneys, law firms, a bank, a real estate agent and agency, and a broker and brokerage firms – all professionals. As the court has already determined, plaintiffs have not alleged facts suggesting that there was actual contractual privity between them and any of the defendants, except for the brief period with the Wong defendants. Therefore, plaintiffs relationship with each of the defendants must be "so close as to approach that of privity."

New York requires three criteria for imposing liability on a professional in the absence of a contract: "(1) an awareness by the maker of the statement that it is to be used for a particular purpose, (2) reliance by a known party on the

statement in furtherance of that purpose, and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." <u>Prudential Ins. Co. v. Dewey Ballantine, Bushby, Palmer & Wood</u>, 80 N.Y.2d 377, 384 (1992); <u>see also</u> <u>Lewis</u>, 138 F. Supp. 2d at 480.

"[A]n attorney owes fiduciary duties to a party other than his client only under the rarest of circumstances. Indeed, such a holding is appropriate only when the attorney, at the client's request, issues an 'opinion letter' which the attorney knew would be relied on by a third party." <u>Lewis</u>, 138 F. Supp. 2d at 480. Here, plaintiffs have not alleged that the Klie defendants the Melo defendants, or Cantanno and Forchelli – all attorneys or law firms and sued in their professional capacities – issued an opinion letter at the request of Khanal. Therefore, they cannot be held liable for negligent misrepresentation.

With regard to defendant NYCB, plaintiffs have not alleged any statements made by NYCB, let alone NYCB's awareness that its statements would be used for a particular purpose. Therefore, plaintiffs' negligent misrepresentation claim against defendant NYCB is dismissed.

Additionally, with regard to the Uddin defendants and Option One, plaintiffs have not alleged facts to satisfy the existence of a special relationship between them. Based on the allegations in the complaint, the Uddin defendants and Option

One only dealt with co-defendant Khanal.  Furthermore, a plaintiff cannot reasonably rely on statements made by a lawyer representing another party.  See, e.g., Mann v. Rusk, 788 N.Y.S.2d 686, 687 (3d Dep't 2005).  No facts suggest that any of these defendants knew that their statements to Khanal would be used for any purpose related to the plaintiffs in particular. Therefore, the Uddin defendants' and Option One's motions to dismiss plaintiffs' negligent misrepresentation claim are granted.

On the other hand, plaintiffs have alleged sufficient facts suggesting that a special relationship existed between them and the Wong defendants for twelve days, between August 18 through August 30, 2006 when plaintiffs terminated the listing agreement with the Wong defendants.  Plaintiffs allege two statements made by the Wong defendants, after they terminated the agreement.  The first statement was that Khanal was pre-qualified for the purchase of the home based on Winzone Realty's pre-qualification procedures.  (Compl. ¶ 22.)  There is no allegation, however, and no fact from which to infer, that this statement was false, or, if it was, that the Wong defendants knew or reasonably should have known that Khanal was not pre-qualified pursuant to their procedures.

Plaintiffs additionally allege that Wong advised plaintiffs that Khanal had a loan commitment, after plaintiffs

terminated the agreement.  Again, there was no allegation and no

fact from which to infer that this statement is false or that,

if it was, that Wong knew, or reasonably should have known, that

Khanal did not have a loan commitment.  Indeed, plaintiffs

allege that Khanal obtained a loan commitment from Network

Mortgage, Inc.  (Compl. ¶ 24.)  Although it is somewhat unclear,

plaintiffs' position is that Khanal did in fact have a loan

commitment from Network Mortgage and, therefore, was not

entitled to the return of her down payment.  (Compl. ¶ 113.)

Accordingly, plaintiffs fail to state a negligent

misrepresentation cause of action against the Wong defendants,

and the claims are dismissed.

### 8. Fraud

Plaintiffs allege that the Melo defendants, Uddin

defendants, Wong defendants, Klie defendants, Khanal and Option

One engaged in fraud by misrepresenting and omitting material

facts.

To establish common law fraud under New York law, the

plaintiff must show that the defendant (1) made a material false

representation or omission of an existing fact, (2) defendant

made such false representation with knowledge of its falsity,

(3) with the intent to defraud, and (4) which plaintiffs

justifiably relied upon to their detriment.  <u>Compudyne Corp. v.</u>

<u>Shane</u>, 453 F. Supp. 2d 807, 831 (S.D.N.Y. 2006) (citing <u>Kline v.</u>
<u>Taukpoint Realty Corp.</u>, 754 N.Y.S.2d 899 (2d Dep't 2003)).
Furthermore, pursuant to Fed. R. Civ. P. 9(b), the plaintiff
must "state with particularity the circumstances constituting
fraud." "[T]o satisfy this requirement, the complaint must:
'(1) specify the statements that the plaintiff contends were
fraudulent, (2) identify the speaker, (3) state where and when
the statements were made, and (4) explain why the statements
were fraudulent.'" <u>Breslin Realty Dev. Corp. v. Shachner</u>, 397
F. Supp. 2d 390, 398 (E.D.N.Y. 2005) (quoting <u>Shields v.</u>
<u>Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994)).

   Plaintiffs have failed to state with sufficient
particularity the circumstances allegedly constituting fraud.
Furthermore, plaintiffs have not identified which statements of
any of the defendants are fraudulent. Therefore, plaintiffs'
causes of action for fraud against all defendants are dismissed.

### 9. Interference with Business Relationships and Economic Prospects: Negligent and Tortious Interference

   Plaintiffs allege negligent and tortious interference
with business relationships and economic prospects against all
defendants and Khanal. Plaintiffs' claims against all
defendants and Khanal for negligent interference fail because no
such claim exists in New York. <u>See</u> <u>Bishop v. Porter</u>, No. 02

Civ. 9542 (JSR) (GWG), 2003 U.S. Dist. LEXIS 7625, at *34
(S.D.N.Y. May 8, 2003) (citing cases).

To make out a *prima facie* case for tortious
interference with business relations or prospective economic
advantage in New York, a plaintiff must establish "(1) that [he]
had a business relationship with a third party; (2) the
defendant knew of that relationship and intentionally interfered
with it; (3) the defendant acted solely out of malice, or used
dishonest, unfair, or improper means; and (4) the defendant's
interference caused injury to the relationship." <u>Kirch v.
Liberty Media Corp.</u>, 449 F.3d 388, 400 (2d Cir. 2006). "[A]
claim for tortious interference with business relations applies
in situations where, although no contractual relationship may
yet exist, the plaintiff alleges that she would have entered
into a contractual relationship with a third party, were it not
for the wrongful acts of the defendant." <u>Semple v. Eyeblaster,
Inc.</u>, No. 08-cv-9004 (HB), 2009 U.S. Dist. LEXIS 45349, at *31
(S.D.N.Y. May 26, 2009). The defendant's conduct must amount to
a crime or an independent tort. <u>Carvel Corp. v. Noonan</u>, 3
N.Y.3d 182, 190 (2004).

As discussed above, plaintiffs have not alleged any
facts supporting the elements of a tortious interference claim,
nor do plaintiffs allege any facts that defendants' conduct was
a crime or an independent tort. Therefore, the plaintiffs'

claims for interference with business relationships against all defendants and Khanal are dismissed.

### 10. Common Law Conspiracy

Plaintiffs allege civil conspiracy between the Melo defendants, Wong defendants, Uddin defendants, Klie defendants, and Khanal for the return of the down payment made by Khanal. Plaintiffs additionally allege a civil conspiracy between the NYCB defendants for the outstanding mortgage balance.

The elements of a civil conspiracy are (1) an agreement between two or more persons, (2) an overt act, (3) intentional participation in the furtherance of a plan or purpose and (4) resulting damage. Official Comm. of Unsecured Creditors ex rel. SmarTalk Teleservices, Inc. Bankruptcy Estate v. Donaldson, Lufkin & Jenrette Sec. Corp., No. 00 Civ. 8688, 2002 WL 362794, at * 13 (S.D.N.Y. Mar. 6,2002). New York law does not recognize the substantive tort of civil conspiracy; the claim is available "only if there is evidence of an underlying actionable tort." Missigman v. USI Northeast, Inc., 131 F. Supp. 2d 495, 517 (S.D.N.Y. 2001).

Here, the court has found that plaintiffs have failed to state a tort cause of action against all defendants and as to all claims; therefore, plaintiffs' civil conspiracy claims against all defendants and Khanal are dismissed.

### 11. Punitive Damages

Plaintiffs allege a claim for punitive damages against all defendants and Khanal.  Under New York law, "there exists no separate cause of action for punitive damages" and, therefore, "the motion to dismiss the plaintiff's separate cause of action for punitive damages is granted" for all defendants.  See Golden First Mortgage Corp. v. Berger, 251 F. Supp. 2d 1132, 1141 (E.D.N.Y. 2003).  Plaintiffs' claim for punitive damages is likewise dismissed as to Khanal.

### B. *Res Judicata* and Collateral Estoppel

The NYCB defendants, Uddin defendants, Melo defendants, and Klie defendants additionally based their motion on the doctrines of *res judicata* and collateral estoppel.  Although the claims against these defendants have been dismissed for failure to state a claim, the court finds that *res judicata* and collateral estoppel provide an alternative bases for dismissal pursuant to Rule 12(b)(6).

Challenges pursuant to the doctrines of *res judicata* and collateral estoppel are properly brought via a motion to dismiss for failure to state a claim under Rule 12(b)(6).  Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994); Nealy v. Groder, No. 08-CV-1233 (JFB) (AKT), 2009 U.S. Dist. LEXIS 20939, at *10-12 n.5 (E.D.N.Y. 2009).  Under the doctrine

of *res judicata*, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Rivet v. Regions Bank of La., 522 U.S. 470, 476 (1998) (internal quotation marks omitted; alteration in original). Collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Schiro v. Farley, 510 U.S. 222, 232 (1994) (internal quotation marks omitted). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).

Under New York law, "*res judicata*, or claim preclusion, bars successive litigation based upon the same transaction or series of connected transactions if (i) there is a judgment on the merits rendered by a court of competent jurisdiction; and (ii) the party against whom the doctrine is invoked was a party to the previous action or in privity with a party who was." New York v. Applied Card Sys., Inc., 863 N.Y.S.2d 615 (2008); Yeiser v. GMAC Mortg. Corp., 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008).

The *res judicata* doctrine applies to defenses that could have been litigated.  <u>Yeiser</u>, 535 F. Supp. 2d at 421. "New York takes a transactional approach to *res judicata* 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'"  <u>Id.</u> at 422 (quoting <u>Sosa v. J.P. Morgan Chase Bank</u>, 822 N.Y.S.2d 122, 124 (2d Dep't 2006)).  To determine what constitutes the "same transaction" courts look to "how the facts are related in time, space, origin or motivation; whether they form a convenient trial unit; and whether treating them as a unit conforms to the parties' expectations."  <u>Id.</u> at 422 (citing <u>Marinelli Assocs. v. Helmsley-Noyes Co.</u>, 705 N.Y.S.2d 571, 575-76 (1st Dep't 2000)).  "Even if there are variations in the facts alleged or different relief is sought, if the actions are grounded on the same gravamen of the wrong, *res judicata* applies."  <u>Yeiser</u>, 535 F. Supp. 2d at 422.

Under New York law, collateral estoppel bars claims if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding."  <u>Colon v. Coughlin</u>, 58 F.3d 865, 869 (2d Cir. 1995).  The parties asserting preclusion bear the burden of showing that the issues at stake were previously

decided, while the opposing party bears the burden of demonstrating that there was no full and fair opportunity to litigate the issues.  Id. at 869.

**1. The NYCB Defendants' Rule 12(b)(6) Motion on the Basis of Preclusion**

The NYCB defendants base their preclusion arguments on the New York state court default judgment rendered on June 16, 2008 in favor of defendant NYCB.  New York Community Bank v. Vermonty, et al., Index No. 21862/2006 (attached to the NYCB defendants' motion as Ex. N) (the "NYCB state court action"). In the NYCB state court action, defendant NYCB, as plaintiff, sought foreclosure of a mortgage on the property, of which NYCB was the mortgagee, and cancellation of the prior "satisfaction of mortgage" recorded by the City Register.  Although appearing in the action, engaging in motion practice, and being ordered to do so, plaintiffs never filed an answer in the NYCB state court action.  As a result, they were in default.  The New York court found that defendant NYCB had a legal and equitable interest in the mortgage and underlying debt and the judgment entered in the special proceeding in which the property was transferred to plaintiffs did not foreclose NYCB's interest.  Additionally, the court cancelled the "satisfaction of mortgage," finding that it was erroneously entered.

Plaintiffs allege the following claims against the NYCB defendants: 1) negligent abuse of process (Count IV), 2) intentional abuse of process (Count V), 3) negligent slander of title (Count VI), 4) intentional slander of title (Count VII), 5) negligence (Count VIII), 6) negligent misrepresentation (Count IX), 7) common law conspiracy (Count XII), 8) tortious interference with business relationships (Count XIII), and 9) negligent interference with business relationships (Count XIV). To the extent that plaintiffs allege facts sounding in any of these claims, plaintiffs' claims are based on the defendant NYCB's prior lawsuit in state court. Plaintiffs were parties to the prior state court action and had the opportunity to litigate the issues raised in plaintiffs' claims in the instant action, as set forth above. The New York court ultimately determined that NYCB, represented by NYCB and Forchelli, was entitled to the balance on the mortgage. If the court were to entertain any of plaintiffs' claims asserted against the NYCB defendants in the present action, it would require reviewing the state court's judgment. Therefore, the court finds that, in addition to failing to sufficiently allege the elements of the causes of action, plaintiffs' claims against the NYCB defendants fail based on the doctrine of collateral estoppel.

**2. The Uddin Defendants', Melo Defendants' and Klie Defendants' Rule 12(b)(6) Motions on the Basis of Preclusion**

The Uddin defendants, Melo defendants and Klie defendants base their Rule 12(b)(6) motion to dismiss for preclusion on the state court judgment rendered on September 19, 2007.  Khanal v. Sheldon, et al., Index No. 2958/07 (N.Y. Sup. Ct. Sept. 17, 2007).  In that proceeding, co-defendant Khanal brought an action against plaintiffs to recover the down payment paid to plaintiffs pursuant to the contract for sale of the property.  The plaintiffs sought dismissal on the basis, in part, that the Wong defendants and Melo defendants failed to disclose or disseminated false information.  The court found that Khanal was entitled to the return of her down payment, pursuant to the terms of the contract.

Plaintiffs allege the following claims against the Uddin defendants, Melo defendants, Klie defendants, and Khanal: 1) breach of contract (Count I), 2) bad faith (Count II), 3) breach of fiduciary duty (Count III), 4) negligent abuse of process (Count IV), 5) intentional abuse of process (Count V), 6) negligent slander of title (Count VI), 7) intentional slander of title (Count VII), 8) negligence (Count VIII), 9) negligent misrepresentation (Count IX), 10) fraud by misrepresentation (Count X), 11) fraud by omission (Count XI), 12) common law conspiracy (Count XII), 13) tortious interference with business

relationships (Count XIII), and 14) negligent interference with business relationships (Count XIV).  All of these claims arise from the same transaction or occurrence at issue in the state court lawsuit and the plaintiffs had the opportunity to raise them as defenses to the state court action.  Plaintiffs failed to do so and, if this court were to entertain these claims it would be required to review, and potentially affect, the state court judgment.  Therefore, plaintiffs' claims against these defendants are also dismissed pursuant to the doctrine of collateral estoppel.

### 3. Defendant Khanal

Although defendant Khanal has not filed a motion to dismiss, the court finds that all claims against Khanal are barred for the reasons stated above and by the doctrine of *res judicata* based on the September 19, 2007 state court judgment, Khanal v. Sheldon, et al., Index No. 2958/07 (N.Y. Sup. Ct. Sept. 17, 2007).  The claims alleged against Khanal arise from the same transaction that was the subject of the prior state court proceeding.  Plaintiffs had the opportunity to raise their claims and, in fact, raised the issue of defendant Khanal's breach of the contract for sale, in the prior proceeding.  Therefore, the court dismisses all claims against Khanal.  See Arizona v. California, 530 U.S. 392, 412 (2000) (the court has

sua sponte authority to dismiss a cause of action on *res judicata* grounds).

## CONCLUSION

Plaintiffs' claims against all defendants are dismissed as follows: 1) Plaintiffs' contract claim against the Melo defendants is dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  Plaintiffs remaining claims against the Melo defendants are dismissed pursuant to Rule 12(b)(6).  2) Plaintiffs' claims against the Uddin defendants, Option One, the Wong defendants, the Klie defendants, and the NYCB defendants are dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). 3) Plaintiffs' claims against Khanal and Athar are dismissed pursuant to Rule 12(b)(6).  The Clerk of the Court is respectfully requested to close this case.


**SO ORDERED.**


Dated: September 30, 2009
       Brooklyn, New York


                              _____    /s/_____
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York