UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
DAVE SHELDON, et al.,

                    Plaintiffs,          **MEMORANDUM AND ORDER**
                                         08-cv-3676(KAM)(LB)

     -against-


TARA KHANAL, et al.,

                    Defendants.
-----------------------------------X

**MATSUMOTO, United States District Judge:**

          Plaintiffs *pro se*, Dave Sheldon ("Sheldon") and Darren
Kearns ("Kearns"), commenced this action in the United States
District Court for the District of Kansas against defendants
Tara Khanal ("Khanal"); Abu Athar ("Athar"); David Melo and the
law firm of David J. Melo, Esq. (the "Melo defendants"); Shams
Uddin, and Network Mortgage, Inc. (the "Uddin defendants");
Rosemarie Klie and the law firm of Sweeney, Gallo, Reich & Bolz,
LLP (the "Klie defendants"); New York Community Bank, James
Cantanno, and the law firm of Forchelli, Curto, Schwartz, Mineo,
Carlino & Cohn, LLP (the "NYCB defendants"); Option One Mortgage
Corp. ("Option One"); and Julie Wong and Winzone Realty, Inc.
(the "Wong defendants").  Under New York State law, plaintiffs
asserted claims against the various defendants for breach of
contract (Count I); bad faith (Count II); breach of fiduciary
duty (Count III); negligent and intentional abuse of process

1

(Counts IV and V); negligent and intentional slander of title

(Counts VI and VII); common law negligence (Count VIII);

negligent misrepresentation (Count IX); fraud by

misrepresentation (Count X); fraud by silence (Count XI); common

law conspiracy (Count XII); and tortious interference with

business relationships and economic prospects (Counts XIII and

XIV). The action was transferred by order dated August 19, 2008

to the Eastern District of New York. (See ECF No. 176, Order

Transferring Case; ECF No. 183, Case Transferred in from

District of Kansas.) By Memorandum and Order dated September

30, 2009, this court dismissed plaintiffs' claims against all

defendants. *See Sheldon v. Khanal*, No. 08-CV-3676, 2009 U.S.

Dist. LEXIS 91599 (E.D.N.Y. Sept. 30, 2009). (*See also* ECF No.

253, Order Granting Motion to Dismiss for Lack of Jurisdiction,

dated 9/30/2009.) On October 15, 2010, the Court of Appeals for

the Second Circuit affirmed the district court's dismissal of

all claims, with the exception of the breach of contract claim

against Khanal, which was remanded to this court for further

proceedings. *See Sheldon v. Khanal*, 396 F. App'x 737 (2d Cir.

2010). (*See also* ECF No. 260, Mandate of USCA as to Notice of

Appeal, dated 10/15/2009.)

Now pending before the court are Khanal's motion to

dismiss plaintiffs' breach of contract claim and plaintiffs'

motion to change venue to Kansas. For the reasons set forth

below, Khanal's motion to dismiss is granted and plaintiffs'
motion to transfer venue is denied.

**BACKGROUND**

## I.    Allegations in the Complaint

The factual and procedural history of this case was
set forth in the court's Memorandum and Order dated September
30, 2009.  *See Sheldon*, 2009 U.S. Dist. LEXIS 91599, at *5-14.
The court will repeat those facts herein only as necessary.

The remaining claim in this case involves a dispute
concerning property located at 148-18 Laburnum Avenue, Flushing,
New York ("the property"), specifically a breach of contract
claim against the remaining defendant, Khanal.  On approximately
September 3, 2006, defendant Wong presented Khanal to plaintiffs
as a potential buyer for the property, which plaintiffs owned at
that time.  (ECF No. 90, First Amended Complaint ("Am. Compl.")
¶¶ 10, 21.)  Khanal signed a preliminary offer to purchase the
property for $675,000 and plaintiffs accepted Khanal's offer.
*See Sheldon v. Khanal*, No. 07-CV-2112, 2007 U.S. Dist. LEXIS
87973, at *31 (D. Kan. Nov. 29, 2007).  (*See also* ECF No. 78,
Memorandum and Order and Order To Show Cause, dated 11/29/2007,
at 16; ECF No. 90, Am. Compl. ¶ 21.)  Wong advised plaintiffs
that Khanal was pre-qualified for the purchase and that the
closing would transpire within 30-45 days.  (ECF No. 90, Am.
Compl. ¶¶ 10, 22.)  Wong did not mention to plaintiffs that

Khanal had any credit problems or that she was married. (*Id.*)

Plaintiffs allege that Wong advised plaintiffs on several

occasions between September 3, 2006 and November 8, 2006 that

Khanal had a loan commitment from Network Mortgage, Inc. (*Id.*

¶¶ 5, 23-25, 31, 32, 38, 39.)

Prior to September 14, 2006, plaintiffs and Khanal,

through her attorney, the Melo defendants, negotiated a contract

of sale (the "contract"). (*Id.* ¶¶ 5, 26; *see* ECF No. 273-2,

Residential Contract of Sale ("Contract").) The contract

contained a "Mortgage Commitment Contingency" clause, which

provided that Khanal's obligation to purchase the property was

contingent on her ability to secure a commitment for $525,000

from an institutional lender within 30 days. (ECF No. 273-2,

Contract ¶ 8(a).) Paragraph 23 of the contract, "Defaults and

Remedies," provided:

> (a) If Purchaser defaults hereunder,
> Seller's sole remedy shall be to receive and
> retain the Downpayment as liquidated
> damages, it being agreed that Seller's
> damages in case of Purchaser's default might
> be impossible to ascertain and that the
> Downpayment constitutes a fair and
> reasonable amount of damages under the
> circumstance and is not a penalty.

(*Id.* ¶ 23.) A Rider to the contract, which the parties also

executed, provided at paragraph 38:

> (c) If Purchaser willfully
> defaults or willfully fails to carry
> out any of the provisions of this

> Contract as set forth herein, the
> Seller shall have the option to cancel
> this Contract.  Seller shall notify
> Purchaser's attorney by mail and upon
> receipt of such notice this agreement
> shall become null and void and the
> Seller shall be entitled to retain the
> deposit paid by Purchaser hereunder, as
> liquidated damages.  The Seller
> reserves the right to bring any legal
> proceedings or action which may be
> deemed necessary to protect his
> interest hereunder all at the sole
> expense of the Purchaser including, and
> not limited to, attorney fees.

(*Id.* ¶ 38.)  The contract provided that Khanal would pay $50,000 into an escrow account as a downpayment. (*Id.* ¶ 3(a).)  On September 13, 2006, Khanal "wrote the down payment check" for $50,000. (ECF No. 90, Am. Compl. ¶ 5(a).)  Plaintiffs executed the contract in Kansas on September 14, 2006. (*Id.* ¶¶ 5, 26.)

On September 22, 2006, Melo and Khanal ordered a title policy for the property. (*Id.* ¶ 28.)  On October 4, 2006 Khanal had a termite inspection completed. (*Id.* ¶ 29.)  On October 4, 2006, Melo and Khanal also advised plaintiffs that the parties' contract had been sent to a second lender. (*Id.* ¶ 29.)  Plaintiffs understood this to mean that Khanal was seeking a better interest rate than the previous commitment. (*Id.*)  On October 10, 2006, the Wong defendants advised plaintiffs that Khanal had a loan commitment and that she planned to close on October 20, 2006. (*Id.* ¶ 31.)

On October 18, 2006, Melo told Kearns that Khanal did not have a loan commitment, and plaintiffs granted Khanal an extension of the closing date. (*Id.* ¶ 33.) On November 2, 2006, Melo advised plaintiffs that Network Mortgage, Inc., and its broker Shams Uddin, wanted Khanal to buy the property in her cousin's name and transfer the deed back to her after closing. (*Id.* ¶ 34.) On November 7, 2006, Uddin, through Network Mortgage, Inc., advised plaintiffs that Khanal's husband had three accounts in collection, that Khanal had a loan commitment, that Khanal refused to accept a co-signer to obtain a second loan commitment at a lower interest rate, and that Sheldon could co-sign a second mortgage at a lower rate with no problem. (*Id.* ¶ 38.) Because of Khanal's husband's poor credit, Khanal needed five percent of the purchase price in a second mortgage or a co-signor. (*Id.* ¶ 39.) Sheldon agreed to co-sign the loan, but Khanal refused. (*Id.*) On November 7, 2006, Melo told plaintiffs that he was canceling the contract with Khanal because she could not qualify for a loan. (*Id.* ¶ 36.) In response, plaintiffs requested liquidated damages and advised the escrow agent that they objected to the release of any escrow funds to Khanal. (*Id.* ¶ 40.)

On November 7, 2006, Khanal asked Option One "to verify her inability to obtain a loan." (*Id.* ¶ 34.) Plaintiffs allege that Option One provided Khanal with a denial. (*Id.*

¶ 9.) Plaintiffs sold the property to a third party on February 16, 2007 for $630,000. (*See* ECF No. 276, Reply Memorandum of Law In Further Support of Defendant's Motion To Dismiss for Lack of Subject Matter Jurisdiction ("Def. Reply") at 5, Ex. A.)

## II. Procedural History

On February 1, 2007, Khanal filed suit in New York State court against plaintiff Sheldon, seeking return of her $50,000 downpayment. *See Khanal v. Sheldon*, 851 N.Y.S.2d 58, 2007 NY Slip Op 51855U, at *2 (N.Y. Sup. Ct. Sept. 19, 2007). The court granted Khanal summary judgment and ordered plaintiffs to return the downpayment. *Id*. at *3; *see also Khanal v. Sheldon*, 867 N.Y.S.2d 460, 461 (2d Dep't 2008) (reducing the amount of the judgment entered by the New York Supreme Court on October 25, 2007 to $50,000). The New York Court of Appeals denied plaintiffs' motion for leave to appeal on June 24, 2009. *See Khanal v. Sheldon*, 12 N.Y.3d 714 (2009). The New York State court decision in favor of Khanal was reversed in 2010. *See Khanal v. Sheldon*, 904 N.Y.S.2d 453 (2d Dep't 2010).

On March 14, 2007, plaintiffs filed the instant action in the United States District Court for the District of Kansas. (*See* ECF No. 1, Complaint, dated 3/14/2007.) In April 2007, defendants filed motions to dismiss the federal action under Fed. R. Civ. P. 12(b)(1)-(3), and (5)-(6). (*See* ECF Nos. 33; 34; 40; 45.) On November 29, 2007, United States District Judge

Katherine H. Vratil of the District of Kansas dismissed all
claims against the Melo defendants and the Uddin defendants for
lack of subject matter jurisdiction. *Sheldon*, 2007 U.S. Dist.
LEXIS 87973, at *75. She ordered plaintiffs to show good cause
as to why the court should not dismiss for lack of subject
matter jurisdiction plaintiffs' claims against Khanal, the Klie
defendants, and the Wong defendants. (*Id.* at *56, *75-76.)
Additionally, Judge Vratil dismissed for lack of personal
jurisdiction claims against the NYCB defendants. (*Id.* at *30-
31, *76.) The court dismissed claims against Option One for
improper venue. (*Id.* at *62, *76.) As clearly stated in Judge
Vratil's November 29, 2007 Memorandum and Order To Show Cause,
the defendants who remained in the case at that time were
Khanal, the Klie defendants, and the Wong defendants. (*Id.* at
*77.)

On December 12, 2007, plaintiffs filed their response
to the court's order to show cause, along with a motion for
reconsideration and a motion for leave to amend the complaint.
(*See* ECF No. 80, Response to Order To Show Cause, Motion for
Reconsideration, and Motion for Leave to Amend Complaint.)
Judge Vratil denied plaintiffs' motion for reconsideration, but
granted their motion for leave to amend the complaint to cure
the defects identified in the November 29, 2007 Memorandum and
Order. *Sheldon v. Khanal*, No. 07-CV-2112, 2008 U.S. Dist. LEXIS

13222, at *5-6, *14 (D. Kan. Feb. 19, 2008). (*See also* ECF No. 89, Memorandum and Order, dated 2/19/2008, at 3, 7.) On February 27, 2008, plaintiffs filed the amended complaint, which asserted claims against all of the originally-named defendants. (*See* ECF No. 90, Am. Compl.)

After the amended complaint was filed, defendants again moved to dismiss plaintiffs' claims. (*See* ECF Nos. 117; 121; 124; 126; 132; 134; 136; 137.) On June 27, 2008, Judge Vratil again dismissed plaintiffs' claims against the NYCB defendants for lack of personal jurisdiction. (ECF No. 165, Memorandum and Order Granting Motion to Dismiss, dated 6/27/2008.) Plaintiffs then moved for reconsideration or in the alternative, leave to transfer the case to cure the jurisdictional defect. (ECF No. 166, Motion for Reconsideration, dated 7/11/2008.) On August 1, 2008, the court ordered plaintiffs to show cause why the entire action should not be transferred to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1404(a) and 1631. *Sheldon v. Khanal*, 605 F. Supp. 2d 1179, 1189 (D. Kan. 2008). (*See also* ECF No. 168, Order and Order To Show Cause, dated 8/1/2008.) In so ordering, the court stated:

> Many of these factors [that courts consider
> when deciding whether to transfer a case]
> favor the Eastern District of New York.
> Without question, the vast majority of
> witnesses are located in New York, outside

> this Court's subpoena power. Much of the
> documentary evidence – especially that of
> the New York companies – is presumably
> located in New York. Any judgment which
> plaintiffs obtain will likely be enforced in
> New York. To the extent that this case
> involves questions of New York law, New York
> courts are best equipped to consider those
> questions. Weighing against these factors is
> plaintiffs' choice of forum. Although the
> Court affords some deference to plaintiffs'
> choice of forum, that factor is not
> determinative and its import is diminished
> in this case by plaintiffs' willingness to
> transfer at least part of the case to
> another forum.  Overall, considerations of
> convenience and fairness favor the transfer
> of this case to the Eastern District of New
> York.

*Sheldon*, 605 F. Supp. 2d at 1189.  On August 19, 2008, the

Kansas district court found that plaintiffs had failed to show

good cause why the case should not be transferred, and the case

was subsequently transferred to this district.  (See ECF No.

176, Order Transferring Case; ECF No. 183, Case Transferred in

from District of Kansas.)

Once again, the Melo defendants, Uddin defendants,

Wong defendants, Klie defendants, NYCB defendants, and defendant

Option One filed motions to dismiss.[1]  (*See* ECF Nos. 201; 204;

205; 221; 231; 237.)  On February 20, 2009, the NYCB defendants

additionally filed a motion for sanctions and injunctive relief

barring plaintiffs from further litigation arising from the

---

[1] Khanal did not file a renewed motion to dismiss after the case was
transferred to the Eastern District of New York.

events that are the subject matter of the instant case.  (*See*
ECF No. 232, First Motion for Sanctions.)

On September 30, 2009, the court dismissed all claims
against all defendants who filed motions to dismiss.  *Sheldon*,
2009 U.S. Dist. LEXIS 91599, at *56-57.  In addition, even
though Khanal had not filed a renewed motion to dismiss, the
court dismissed all claims against Khanal.  *Id.*  In particular,
with respect to the breach of contract claim, the court noted
that "[t]he claims alleged against Khanal arise from the same
transaction that was the subject of the prior state court
proceeding . . .  [in which] [p]laintiffs had the opportunity to
raise their claims and, in fact, raised the issue of defendant
Khanal's breach of contract for sale . . . ."  *Id.* at *56.
Plaintiffs appealed the decision.  (*See* ECF No. 255, Notice of
Appeal, filed 10/8/2009; ECF No. 258, Amended Notice of Appeal,
filed 11/2/2009.)

By order dated June 8, 2010, the New York State
Appellate Division reversed the earlier state court judgments
awarding Khanal $50,000, finding that the trial court had
"improvidently exercised its discretion" and that Sheldon had
"established a potentially meritorious defense by proffering
evidence that [Khanal] failed to comply with the mortgage
contingency clause set forth in the subject contract for the
purchase of real property."  *Khanal v. Sheldon*, 904 N.Y.S.2d at

454.  The court remanded the case to the trial court for further
proceedings.  *Id.*

On October 15, 2010, the Second Circuit Court of
Appeals affirmed the district court's dismissal of all claims
against all defendants, with the sole exception of the breach of
contract claim against Khanal.[2]  *Sheldon*, 396 F. App'x at 740.
The Court of Appeals found that because the district court had
relied on the New York State court judgment that was
subsequently reversed, it could not affirm the dismissal on *res
judicata* grounds.  *Id.* at 739.  In remanding the contract claim
against Khanal to this court for further proceedings, the Court
of Appeals noted, "[w]e do not ourselves conclude that
plaintiffs have adequately pleaded such a contract claim, and we
doubt the likelihood of the plaintiffs' ultimate success on this
claim."  *Id.* at 740.

On October 21, 2010, plaintiffs filed a letter asking
the court to transfer the case back to the District of Kansas.
(*See* ECF No. 261, Letter Motion To Change Venue.)  On December
15, 2010, plaintiffs served Khanal with their motion to change
venue.  (*See* ECF No. 277, Motion and Memorandum of Law In
Support of Transferring Venue to Kansas.)  On the same date,

---

[2] In addition, although the Second Circuit Court of Appeals noted that
"[p]laintiffs' conduct during the course of this litigation has been, on the
whole, highly troubling," the court denied a motion by the NYCB defendants to
impose sanctions against plaintiffs pursuant to Fed. R. App. P. 38.  *Sheldon*,
396 F. App'x at 740.

Khanal served plaintiffs with the instant motion to dismiss. (*See* ECF No. 272, Notice of Motion; *see also* ECF No. 274, Memorandum of law In Support Of Defendant Tara Khanal's Motion To Dismiss for Lack of Subject Matter Jurisdiction ("Def. Mem.").) On January 4, 2011, the parties opposed each other's respective motions. (*See* ECF No. 275, Plaintiffs' Joint Response Affirmations In Opposition To Tara Khanal's Motion for Summary Judgment ("Pl. Opp."); ECF No. 278, Memorandum of Law of Defendant Tara Khanal In Opposition To Plaintiffs' Motion To Transfer Venue to Kansas.) Replies were served and the fully briefed motions were filed with the court on January 11, 2011. (*See* ECF No. 276, Def. Reply; ECF No. 279, Reply In Support of Motion and Memorandum To Transfer Venue to Kansas.)

## DISCUSSION

### I.  Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)

Khanal moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Federal subject matter jurisdiction exists only when a "federal question" is presented under 28 U.S.C. § 1331, or, as provided in 28 U.S.C. § 1332, where the plaintiffs are of diverse citizenship from all the defendants and the amount in controversy exceeds $75,000. At any point in the litigation, where the district court determines that jurisdiction is

lacking, the court must dismiss the complaint without regard to
its merits.[3] *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d
1182, 1188 (2d Cir. 1996); *Lyndonville Sav. Bank & Trust Co. v.
Lussier,* 211 F.3d 697, 700-01 (2d Cir. 2000) ("If subject matter
jurisdiction is lacking, the action must be dismissed."); *Manway
Constr. Co. v. Hous. Auth. of Hartford*, 711 F.2d 501, 503 (2d
Cir. 1983) ("[A]ny party or the court sua sponte, at any stage
of the proceedings, may raise the question of whether the court
has subject matter jurisdiction; and if it does not, dismissal
is mandatory.").

As the party "seeking to invoke the subject matter
jurisdiction of the district court," *Scelsa v. City Univ. of New
York*, 76 F.3d 37, 40 (2d Cir. 1996), the plaintiff must
demonstrate by a preponderance of the evidence that there is
subject matter jurisdiction. *Aurecchione v. Schoolman Transp.
Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In considering a
motion to dismiss for lack of subject matter jurisdiction

---

[3] Plaintiffs argue that both the Kansas district court and the Second Circuit
Court of Appeals determined that federal subject matter jurisdiction was
proper. (ECF No. 275, Pl. Opp. at 2, 7-9.) However, neither of those courts
conclusively found that the requirements for subject matter jurisdiction were
satisfied. Instead, Judge Vratil of the District of Kansas noted that "the
Court is therefore satisfied that *at this point*, it should not dismiss for
lack of subject matter jurisdiction." *Sheldon*, 2008 U.S. Dist. LEXIS 13222,
at *13 (emphasis added). Further, the Second Circuit Court of Appeals did
not address the amount in controversy requirement at all. *See Sheldon*, 396
F. App'x at 740 ("Accordingly, we need not address plaintiffs' challenge to
the district court's amount-in-controversy analysis."). Because this court
is obligated to dismiss the complaint if it finds that it lacks subject
matter jurisdiction over the action, it is proper to consider this issue now.
*Manway Constr. Co.*, 711 F.2d at 503.

pursuant to Rule 12(b)(1), federal courts "need not accept as true contested jurisdictional allegations." *Jarvis v. Cardillo*, No. 98-CV-5793, 1999 U.S. Dist. LEXIS 4310, at *7 (S.D.N.Y. Apr. 6, 1999). Rather, a court appropriately may resolve disputed jurisdictional facts by referring to evidence outside the pleadings, such as affidavits. *See Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998); *Sanchez v. Velez*, No. 08-CV-1519, 2009 U.S. Dist. LEXIS 64744, at *1 n.1 (S.D.N.Y. July 24, 2009) (considering on motion to dismiss grievances referenced in the complaint but submitted to the court in connection with the motion to dismiss).[4]

Although "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996), a

---

[4] Khanal's motion is titled a "motion to dismiss." (*See* ECF No. 274, Def. Mem.; ECF No. 276, Def. Reply.) However, the Declaration of Rashel M. Mehlman filed in connection with Khanal's motion states that it is submitted "in support of the defendants [sic] motion for summary judgment and to dismiss the plaintiffs' breach of contract claim." (ECF No. 272-2, Declaration of Rashel M. Mehlman, dated 12/15/2010 ("Mehlman Decl.") ¶ 2.) In addition, Khanal's Memorandum of Law in support of her motion contains a "Concise Statement of Material Facts Not In Dispute Pursuant to Local Civil Rule 56.1," (ECF No. 274, Def. Mem. at 7), which is required by Local Civil Rule 56.1 only "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure." Local Civil Rule 56.1. Further, plaintiffs' opposition is titled "Plaintiffs' Joint Response Affirmations In Opposition To Tara Khanal's Motion for Summary Judgment." (*See* ECF No. 275, Pl. Opp.) Nevertheless, because the motion is framed as a motion to dismiss and the court is permitted to refer to evidence outside the pleadings in support of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court will consider Khanal's motion as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *See Zappia*, 215 F.3d at 253; *Filetech*, 157 F.3d at 932; *Sanchez*, 2009 U.S. Dist. LEXIS 64744 at *1 n.1.

court should "'constru[e] all ambiguities and draw[] all inferences' in a plaintiff's favor." *Aurecchione,* 426 F.3d at 638 (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

Here, plaintiffs allege jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1367. (ECF No. 90, Am. Compl. ¶ 14.) Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over all civil actions where there is diversity of citizenship between the parties and "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). Plaintiffs allege, and Khanal does not dispute, that there is diversity of citizenship because Sheldon is a citizen of Kansas, Kearns is a citizen of Missouri, and Khanal is a citizen of New York. (ECF No. 90, Am. Compl. ¶¶ 1-3.) However, Khanal alleges that dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is warranted because plaintiffs have not met the amount in controversy requirement of 28 U.S.C. § 1332(a) in that plaintiffs' breach of contract claim cannot exceed the statutorily required amount of $75,000. (ECF No. 274, Def. Mem. at 9.)

**A. The Amount in Controversy Requirement**

For the purpose of determining the amount in controversy pursuant to 28 U.S.C. § 1332(a), the amount that plaintiffs allege in the complaint controls if the claim is

16

apparently made in good faith.  *St. Paul Mercury Indem. Co. v.
Red Cab Co.*, 303 U.S. 283, 288 (1938).  A plaintiff must
establish "to a 'reasonable probability' that the claim is in
excess of the statutory jurisdictional amount."  *Tongkook Am.,
Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994).
While the Second Circuit "recognizes a rebuttable presumption
that the face of the complaint is a good faith representation of
the actual amount in controversy," *Wolde-Meskel v. Vocational
Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir.
1999), a court must dismiss the case for want of subject matter
jurisdiction if, "from the face of the pleadings, it is
apparent, to a legal certainty, that the plaintiff cannot
recover the amount claimed or . . . that the plaintiff never was
entitled to recover that amount, and that his claim was
therefore colorable for the purpose of conferring jurisdiction."
*Tongkook*, 14 F.3d at 784 (citing *St. Paul*, 303 U.S. at 288-89).
Although "[t]he amount in controversy is determined at the time
the action is commenced," a subsequent discovery that the true
amount in controversy is below the minimum statutory
jurisdictional amount requires dismissal for lack of subject
matter jurisdiction.  *Id.* at 784, 786.

   1. *Attorneys' Fees*

        Here, plaintiffs assert that they have satisfied the
jurisdictional amount by demanding liquidated damages plus

attorneys' fees for a total of $75,000.  (ECF No. 275, Pl. Opp.
at 9-10.)  Specifically, Count One of the amended complaint
alleges that Khanal breached the contract, entitling plaintiffs
to "liquidated damages of $50,000.00 and attorney fees that will
exceed $25,000.00."  (ECF No. 90, Am. Compl. ¶ 105(a).)
Further, in response to Judge Vratil's November 29, 2007
Memorandum & Order To Show Cause, plaintiffs submitted sworn
statements as part of their proposed amended complaint stating
that attorneys' fees would exceed $25,000.  (*See* ECF No. 80-3,
Affidavit of Dave Sheldon, dated 12/12/2007; ECF No. 80-4,
Affidavit of Darren K. Kearns, dated 12/12/2007.)

    Although the addition of $25,000 to plaintiffs'
claimed liquidated damages would exceed the amount in
controversy required for diversity jurisdiction, "[attorneys']
fees may not properly be included in determining the
jurisdictional amount unless they are recoverable as a matter of
right" pursuant to a statute or contract.  *Givens v. W.T. Grant
Co.*, 457 F.2d 612, 614 (2d Cir. 1972).  Under New York law,
attorneys' fees are not recoverable in actions for breach of
contract, absent a contractual provision stating otherwise.
*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34,
74-75 (2d Cir. 2004).  Therefore, in order for attorneys' fees
to be counted toward the jurisdictional amount, Khanal must be
contractually obligated to pay such fees.

Here, paragraph 23 of the contract between plaintiffs
and Khanal provides that in the event Khanal defaults under the
contract, plaintiffs' "sole remedy shall be to receive and
retain the Downpayment as liquidated damages." (ECF No. 273-2,
Contract ¶ 23.) Accordingly, if plaintiffs' allegation is that
Khanal breached the contract, plaintiffs' damages are limited by
the terms of the contract to the $50,000 downpayment, which
falls far short of the statutory amount of $75,000.[5]

In addition, the contract also provides at paragraph
38 that if Khanal "willfully defaults or willfully fails to
carry out any of the provisions of this Contract," plaintiffs
may enforce their rights under the contract at Khanal's expense,
"including, and not limited to, attorney fees." (*Id.* ¶ 38.)
Thus, if Khanal willfully breached the contract, she would be
contractually obligated to compensate plaintiffs for fees they

---

[5] Under New York law, liquidated damages clauses are enforceable provided that
the liquidated amount is not plainly disproportionate to the probable loss
anticipated when the contract was executed. *United Air Lines, Inc. v. Austin
Travel Corp.*, 867 F.2d 737, 740 (2d Cir. 1989); *U.S. Fid. & Guar. Co.*, 369
F.3d at 70; *Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d
420, 424 (1977). Further, a party may not recover liquidated damages and
actual damages. *U.S. Fid. & Guar. Co.*, 369 F.3d at 70 ("[L]iquidated and
actual damages are mutually exclusive remedies under New York law." (citing
*X.L.O. Concrete Corp. v. John T. Brady & Co.*, 482 N.Y.S.2d 476 (1st Dep't
1984)); *195 Lombardy St., LLC v. McCarthy*, 831 N.Y.S.2d 355, 2006 NY Slip Op
52078U, at *2 (N.Y. Sup. Ct. Jan. 4, 2006). Further, under New York law,
"[w]here a buyer wrongfully refuses to close title under a contract for the
sale of real property, [the] seller's damages are measured by the difference
between the purchase price and the market value of the property. As an
alternative, the seller may retain the buyer's down payment as liquidated
damages." *1776 Assocs. Corp. v. Broadway W. 57th St. Assocs.*, 585 N.Y.S.2d
316, 317 (1st Dep't 1992) (Rubin, J., dissenting) (internal citations and
quotation marks omitted). Thus, plaintiffs' recovery for breach of the
contract is limited by contract and by law to the downpayment amount of
$50,000.

paid to attorneys in connection with enforcing their rights

under the contract.[6]

Nevertheless, even if plaintiffs were to prevail on a

theory that Khanal willfully breached the contract, they would

not be entitled to attorneys' fees as a matter of law. It is

settled law that a *pro se* litigant who is not a lawyer is not

entitled to attorneys' fees. *See Kay v. Ehrler*, 499 U.S. 432,

435 (1991) ("The Circuits are in agreement, however, on the

proposition that a *pro se* litigant who is *not* a lawyer is *not*

entitled to attorney's fees."); *Barash v. Ford Motor Credit*

*Corp.*, No. 06-CV-6497, 2007 U.S. Dist. LEXIS 44641, at *17 n.11

(E.D.N.Y. June 20, 2007) (concluding that a *pro se* plaintiff is

not entitled to attorneys' fees "as a matter of law" and

accordingly declining to "consider such fees in determining

whether the relief sought satisfies the jurisdictional amount"

under 28 U.S.C. § 1332(a) (citing *Kay*, 499 U.S. at 435-38)).

Further, numerous courts in this Circuit, as well as the Supreme

Court, have concluded that *pro se* litigants may not claim

attorneys' fees pursuant to statutory fee-shifting provisions,

even if they are lawyers. *See Kay*, 499 U.S. at 438 (concluding

---

[6] Khanal repeatedly and incorrectly argues that the contract lacks any
provision permitting either party to recover attorneys' fees. (*See* ECF No.
274, Def. Mem. at 8, 9, 12, 18.) In fact, while the New York State Appellate
Division held that the contract lacked a provision authorizing attorneys'
fees in favor of Khanal, the court did not find that plaintiffs could not
recover attorneys' fees. *See Khanal*, 867 N.Y.S.2d at 462 ("The agreement at
issue here does not include a provision for [Khanal] to recover an attorney's
fee in this action.").

that a *pro se* attorney is not entitled to recover attorneys'
fees for representing himself in an action under 42 U.S.C. §
1988); *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 694 (2d
Cir. 1998) (holding that a *pro se* attorney litigant is not
entitled to recover attorneys' fees in a Title VII or a Section
1981 action); *Kurz v. Chase Manhattan Bank*, 273 F. Supp. 2d 474,
481 (S.D.N.Y. 2003) ("One thing is quite clear: [plaintiff] is
not eligible to recover attorneys' fees, even if he prevails,
because an attorney *pro se* does not qualify for such
reimbursement in this Circuit."); *Texaco Inc. S'holder Deriv.
Litig.*, 123 F. Supp. 2d 169, 172-73 (S.D.N.Y. 2000) (citing line
of cases in the Second Circuit denying attorneys' fees for *pro
se* lawyers).

In establishing the rule that a *pro se* attorney may
not recover attorneys' fees, the Supreme Court in *Kay v. Ehrler*
reasoned that representation by independent counsel has distinct
advantages over even a skilled lawyer who represents himself.
The Court explained that a *pro se* attorney litigant would be
"deprived of the judgment of an independent third party in
framing the theory of the case, evaluating alternative methods
of presenting the evidence, cross-examining hostile witnesses,
formulating legal arguments, and in making sure that reason,
rather than emotion, dictates the proper tactical response to
unforeseen developments in the courtroom." *Kay*, 499 U.S. at

437. The Supreme Court concluded that the policy of "furthering the successful prosecution of meritorious claims" was best served by a rule that "creates an incentive to retain counsel in every such case." *Id.* at 438. Permitting a fee award to a *pro se* litigant, even one who is a lawyer, would instead "create a disincentive to employ counsel." *Id*.

In the instant case, both plaintiffs are proceeding *pro se*.[7] Although Kearns is the only plaintiff who signed the amended complaint and he referred to himself therein as the "Attorney for Plaintiffs," (*see* ECF No. 90, Am. Compl. at 58), subsequent filings signed by both plaintiffs indicate that they are *pro se*. (*See, e.g.,* ECF No. 159, Response by Plaintiffs Dave Sheldon, Darren K. Kearns re Motion to Disqualify Counsel, dated 5/29/2008, at 2 ("Sheldon and Kearns are proceeding pro se"); ECF No. 261, Letter Motion To Change Venue, dated 10/21/2010; ECF No. 275, Pl. Opp. at 11; ECF No. 277, Motion and Memorandum In Support of Transferring Venue to Kansas, dated 12/15/2010, at 10.) Further, although Kearns is an attorney admitted to practice law in New York State, he is not admitted to practice law in this court and he has not been admitted *pro hac vice*. Moreover, the court notes that on May 7, 2008, Kearns filed a motion to withdraw as counsel for Dave Sheldon, which

---

[7] Kearns is a licensed attorney in New York. (*See* ECF No. 272-9, Motion for Attorney's Fees, dated 10/28/2010.) Yet, he signed numerous submissions "*pro se*," as detailed above.

Magistrate Judge David J. Waxse of the District of Kansas granted on May 12, 2008. (*See* ECF No. 142, Motion To Withdraw as Attorney; ECF No. 148, Order Granting Motion To Withdraw.) Therefore, because Sheldon is not represented by independent counsel, he is not entitled to attorneys' fees as a matter of law.

Further, even though Kearns is an attorney, he may not receive attorneys' fees for representing himself. The Supreme Court's analysis in *Kay v. Ehrler* is particularly applicable here, as it is evident that plaintiffs would have benefited from the judgment and skills of independent counsel in evaluating the arguments and framing the issues. Without such assistance, plaintiffs filed a complaint – which the Kansas district court described as "rambling, poorly-organized and often incomplete," *Sheldon*, 2007 U.S. Dist. LEXIS 87973, at *8 n.2 – that asserted claims, all but one of which have been dismissed. The Kansas court further stated that it was "wholly unimpressed with plaintiffs' advocacy in this case. Many of plaintiffs' arguments are fragmented, legally unsupported and generally unprofessional." *Id.* at *57 n.15. Indeed, although the Second Circuit Court of Appeals declined to impose sanctions on plaintiffs, the court observed that plaintiffs' conduct during the course of the litigation was "highly troubling." *Sheldon*, 396 F. App'x at 740. Accordingly, even though Kearns is an

attorney and may have expended significant time prosecuting his own case, he was not entitled to an award of attorneys' fees for his own time. Although it is true that as of the time plaintiffs commenced the instant action, they could have retained an attorney for whose services they would be entitled to attorneys' fees, they did not do so then, nor have they done so now. Because the *pro se* plaintiffs in this case are not entitled to attorneys' fees as a matter of law, such fees may not be counted toward the statutory amount in controversy.

Moreover, even if plaintiffs had retained independent counsel, plaintiffs nonetheless have not established to a reasonable probability that any fees owed to counsel would satisfy the jurisdictional amount in controversy. Although plaintiffs claim that their attorneys' fees in prosecuting the case will exceed $25,000, this estimate is entirely speculative. The contract does not indicate what amount of attorneys' fees plaintiffs would be entitled to collect should they bring an action to protect their interests thereunder. (*See* ECF No. 273-2, Contract ¶ 38.) *See also Houston v. Scheno*, No. 06-CV-2901, 2007 U.S. Dist. LEXIS 56076, at *4, *8 (E.D.N.Y. July 31, 2007) (although "reasonable attorneys' fee" had to be included in jurisdictional amount because lease agreement required payment of those fees, where the lease agreement did not define or quantify such fees, defendant failed to meet his burden of

establishing that the jurisdictional amount was satisfied). *Cf.*

*Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d 429, 438 (N.D.N.Y.

2007) (where the agreement stipulated that reasonable attorneys'

fees would consist of 25 percent of any money judgment, the

court found no need for proof that such fees would exceed the

jurisdictional amount); *Window Headquarters v. MAI Basic Four*,

Nos. 91-CV-1816, 93-CV-4135, 92-CV-5283, 1994 U.S. Dist. LEXIS

17104, at *28 (S.D.N.Y. Nov. 28, 1994) (where lease agreement

stated that if lessee failed to make payments it must pay

attorneys' fees of 20 percent on the balance due, court found

that the addition of such fees would satisfy the jurisdictional

amount).  Nor have plaintiffs provided any evidence that their

attorneys' fees going forward would be sufficient to surmount

the jurisdictional threshold of $75,000.[8]  *See Houston*, 2007 U.S.

Dist. LEXIS 56076, at *8; *Ins. Co. of the State of Pennsylvania*

*v. Waterfield*, 371 F. Supp. 2d 146, 149 (D. Conn. 2005) (where

defendants provided no evidence in support of their expected

attorneys' fees, the court found that the amount of such fees

was speculative and defendants failed to establish to a

reasonable probability that the amount in controversy exceeded

the jurisdictional amount); *Fallstrom v. L.K. Comstock & Co.,*

*Inc.*, No. 3:99-CV-952, 1999 U.S. Dist. LEXIS 12339, at *6-7 (D.

---

[8]  The court notes that on October 28, 2010, plaintiffs filed a motion for
attorney's fees in the Second Circuit.  Although that motion attached an
invoice for Kearns's legal fees, the entries therein were general and vague.
(*See* ECF No. 272-9, Motion for Attorneys' Fees dated 10/28/2010.)

Conn. July 13, 1999).  Accordingly, even if attorneys' fees could properly be included, plaintiffs have failed to meet their burden of demonstrating by a preponderance of the evidence that the amount in controversy in this case will exceed $75,000.

### 2. *Punitive Damages*

Finally, plaintiffs assert that they are entitled to $500,000 in punitive damages, which, when added to the $50,000 in liquidated damages provided under the contract, will exceed the statutorily required amount in controversy.  (*See* ECF No. 275, Pl. Opp. at 4, 10; *see also* ECF No. 273-2, Contract ¶ 119.) This argument also fails.  Under New York law, punitive damages are not recoverable in a breach of contract action unless they are necessary to vindicate a public right.  *See Volt Delta Res. LLC v. Soleo Commc'ns, Inc.*, 816 N.Y.S.2d 702, 2006 NY Slip Op 50497U, at *6 (N.Y. Sup. Ct. Mar. 29, 2006) (citations omitted); *Career Initiatives Corp. v. Palmer*, 893 F. Supp. 295, 296 (S.D.N.Y. 1995) (refusing to count claim for punitive damages for purposes of satisfying the amount in controversy because plaintiffs made no showing that defendants' conduct was directed at the public).  Indeed, "even a breach committed willfully and without justification does not warrant the imposition of punitive damages." *Livingston v. Singer*, No. 01-CV-6979, 2003 U.S. Dist. LEXIS 22471, at *13 (S.D.N.Y. Dec. 16, 2003) (quoting *Keles v. Yale Univ.*, 889 F. Supp. 729, 735 (S.D.N.Y. 1995)).

Here, the amended complaint does not allege that Khanal's conduct was directed at the public or that plaintiffs seek to vindicate any public right.  Therefore, as a matter of law, plaintiffs may not recover punitive damages on their breach of contract claim against Khanal, and punitive damages may not be invoked to augment the amount in controversy in this case.

*    *    *

Because plaintiffs have failed to demonstrate that, if successful, they could recover more than $75,000, the court lacks subject matter jurisdiction to adjudicate plaintiffs' breach of contract claim against Khanal.  Accordingly, plaintiffs' breach of contract claim against Khanal is dismissed pursuant to Fed. R. Civ. P. 12(b)(1).[9]

**II.   Motion to Change Venue to Kansas**

Plaintiffs move to change venue to Kansas pursuant to 28 U.S.C. § 1404(a).  (*See* ECF No. 277, Motion and Memorandum In Support of Transferring Venue to Kansas, dated 12/15/2010.)  Because plaintiffs' sole remaining claim against Khanal is dismissed, the motion to change venue is denied as moot.

---

[9] Because the complaint is dismissed for lack of subject matter jurisdiction, the court need not consider Khanal's request in the alternative to stay the action pending the resolution of the parallel state court action.  (*See* ECF No. 276, Def. Reply at 7.)

## CONCLUSION

For the foregoing reasons, Khanal's motion to dismiss is granted and plaintiffs' motion to change venue is denied. The Clerk of the Court is respectfully requested to close the case.

**SO ORDERED.**

Dated: August 31, 2011
       Brooklyn, New York

_____    /s/_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York